410 U.S. 656 (1973)
ORTWEIN ET AL.
v.
SCHWAB ET AL.
No. 72-5431.
Supreme Court of United States.
Decided March 5, 1973.
APPEAL FROM THE SUPREME COURT OF OREGON.
PER CURIAM.
Appellants contend that Oregon's $25 appellate court filing fee, as applied in this case, violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment and, also, the First Amendment as incorporated into the Fourteenth. The Supreme Court of Oregon decided otherwise. 262 Ore. 375, 498 P. 2d 757 (1972). We affirm that decision for reasons we found persuasive in United States v. Kras, 409 U. S. 434 (1973).
Appellant Ortwein (who also was receiving social security and an urban renewal allowance) sustained a reduction of approximately $39 per month in his Oregon old-age assistance when his county welfare agency determined that he shared shelter and expenses with another person in a manner that relieved him of some of the costs upon which his original award had been based. *657 Ortwein appealed to the Oregon Public Welfare Division. The Division conducted a hearing and upheld the county agency's decision.[1]
Appellant Faubion claimed that certain expenses related to work training under a federal program should have been deducted in calculating her income.[2] Most of these deductions were disallowed, after hearing, by the Public Welfare Division. The disallowance resulted in smaller welfare payments to Faubion over a five-month period.
*658 Judicial review of these agency decisions is authorized under state law. Ore. Rev. Stat. § 183.480 (1971). In cases that are contested, as these were, jurisdiction for judicial review is conferred upon the Oregon Court of Appeals. § 183.480 (2). All appellants in civil cases in Oregon pay a $25 filing fee in appellate courts. §§ 21.010 and 21.040 (1971). Each of the present appellants alleged that he was an indigent unable to pay the filing fee; each moved to proceed in forma pauperis in the Oregon Court of Appeals. The motions were denied without opinions. Appellants then petitioned the Supreme Court of Oregon for an alternative writ of mandamus ordering the Court of Appeals to accept appellants' cases without payment of fees. The Supreme Court of Oregon requested supplemental briefs and then issued its opinion denying the petition for mandamus. 262 Ore. 375, 498 P. 2d 757 (1972). From this denial the present appeal is taken.

I
Relying on this Court's opinion in Boddie v. Connecticut, 401 U. S. 371 (1971), and on the remand-for-reconsideration order in Frederick v. Schwartz, 402 U. S. 937 (1971),[3] appellants contend that the Oregon appellate filing fee, when applied to indigents seeking to appeal an adverse welfare decision, violates the Due Process Clause of the Fourteenth Amendment. In United States v. Kras, 409 U. S. 434 (1973), this Court upheld statutorily imposed bankruptcy filing fees against a constitutional challenge based on Boddie. We emphasized the special nature of the marital relationship and its concomitant associational interests, and noted that they were not affected in that case and that the objective sought by appellant Kras could be obtained through alternative *659 means that did not require a fee. Boddie, of course, was not concerned with post-hearing review. We now conclude that Kras, rather than Boddie, governs the present appeal, and we emphasize that Frederick was remanded, and not summarily reversed.
A. In Kras, we observed that one's interest in a bankruptcy discharge "does not rise to the same constitutional level" as one's inability to dissolve his marriage except through the courts. 409 U. S., at 445. In this case, appellants seek increased welfare payments. This interest, like that of Kras, has far less constitutional significance than the interest of the Boddie appellants. Compare Dandridge v. Williams, 397 U. S. 471 (1970), and Richardson v. Belcher, 404 U. S. 78 (1971), with Loving v. Virginia, 388 U. S. 1 (1967); Skinner v. Oklahoma, 316 U. S. 535 (1942); Griswold v. Connecticut, 381 U. S. 479 (1965), and Eisenstadt v. Baird, 405 U. S. 438 (1972). Each of the present appellants has received an agency hearing at which it was determined that the minimum level of payments authorized by law was being provided. As in Kras, we see "no fundamental interest that is gained or lost depending on the availability" of the relief sought by appellants. 409 U. S., at 445.
B. In Kras, the Court also stressed the existence of alternatives, not conditioned on the payment of the fees, to the judicial remedy. Id., at 446. The Court has held that procedural due process requires that a welfare recipient be given a pretermination evidentiary hearing. Goldberg v. Kelly, 397 U. S. 254, 264, 266-271 (1970). These appellants have had hearings.[4] The *660 hearings provide a procedure, not conditioned on payment of any fee, through which appellants have been able to seek redress. This Court has long recognized that, even in criminal cases, due process does not require a State to provide an appellate system. McKane v. Durston, 153 U. S. 684, 687 (1894); see Griffin v. Illinois, 351 U. S. 12, 18 (1956); District of Columbia v. Clawans, 300 U. S. 617, 627 (1937); Lindsey v. Normet, 405 U. S. 56, 77 (1972). Under the facts of this case, appellants were not denied due process.[5]

II
Appellants urge that the filing fee violates the Equal Protection Clause by unconstitutionally discriminating against the poor. As in Kras, this litigation, which deals with welfare payments, "is in the area of economics and social welfare." 409 U. S., at 446; see Dandridge v. Williams, 397 U. S., at 485-486. No suspect classification, such as race, nationality, or alienage, is present. See Graham v. Richardson, 403 U. S. 365, 372 (1971). The applicable standard is that of rational justification. United States v. Kras, supra.
The purpose of the filing fee, as with the bankruptcy fees in Kras, is apparent. The Oregon court system incurs operating costs, and the fee produces some small revenue to assist in offsetting those expenses. Cf. Ore. Rev. Stat. § 21.590 (1971). Appellants do not contend that the fee is disproportionate or that it is not an effective means to accomplish the State's goal. The requirement of rationality is met.

*661 III
Relying on Lindsey v. Normet, supra, appellants contend that the fee is not required of certain classes of litigants, and that an appeal is thus "capriciously and arbitrarily denied" to other appellants, such as themselves, also in violation of the Equal Protection Clause. See 405 U. S., at 77. They assert that criminal appeals, habeas corpus petitions from state institutions or civil commitment proceedings, and appeals from terminations of parental rights may be filed in forma pauperis in the Oregon Court of Appeals. Jurisdictional Statement 23. We are not told just why these filings are permitted, but the opinion of the Supreme Court of Oregon makes it clear that in forma pauperis appeals are allowed only if supervening law requires a right to a free appeal. 262 Ore., at 384, 498 P. 2d, at 761-762.
If the Oregon courts have interpreted the applicable law to give special rights in the criminal area, in civil cases that result in loss of liberty, and in cases terminating parental rights, we cannot say that this categorization is capricious or arbitrary.
Affirmed.
MR. JUSTICE STEWART dissents, believing that the doctrine of Boddie v. Connecticut, 401 U. S. 371 (1971), requires reversal of this judgment. See United States v. Kras, 409 U. S. 434, 451 (1973) (dissenting opinion). He is convinced, however, that the Court is so resolutely firm in its contrary view that it would serve no useful purpose to set this case for oral argument.
MR. JUSTICE DOUGLAS, dissenting.
The majority today broadens and fortifies the "private preserve for the affluent." Meltzer v. C. Buck Le Craw & Co., 402 U. S. 954, 961 (opinion of DOUGLAS, J.). *662 The Court upholds a scheme of judicial review whereby justice remains a luxury for the wealthy.

I
Appellants, welfare recipients whose benefits were reduced after adverse determinations by the Oregon Public Welfare Division, were denied access to the Oregon courts for review of those decisions solely on the grounds that they were unable to pay a $25 filing fee. Judicial review of administrative decisions is not otherwise available under Oregon law. I continue to believe that this invidious discrimination against the poverty-strickena classification based upon wealthis proscribed by the Equal Protection Clause of the Fourteenth Amendment. Meltzer, supra; Boddie v. Connecticut, 401 U. S. 371, 383 (DOUGLAS, J., concurring in result); cf. United States v. Kras, 409 U. S. 434, 457 (opinion of DOUGLAS and BRENNAN, JJ.).
There is an additional consideration relevant here. The majority properly notes that "[t]his Court has long recognized that, even in criminal cases, due process does not require a State to provide an appellate system." We are concerned in this case not with appellate review of a judicial determination, but with initial access to the courts for review of an adverse administrative determination. By analogizing these two situations, the majority sub silentio answers a question this Court studiously has avoidedwhether there is a due process right to judicial review. See 4 K. Davis, Administrative Law Treatise § 28.18. Access to the courts before a person is deprived of valuable interests, at least with respect to questions of law, seems to me to be the essence of due process. Cf. Lindsey v. Normet, 405 U. S. 56, 84 (DOUGLAS, J., dissenting in part). We have recognized that token access cannot satisfy the requirements *663 of due process. See, e. g., Mullane v. Central Hanover Trust Co., 339 U. S. 306. Certainly, no access at all cannot stand in better stead. Appellant Ortwein contends that the order of the Public Welfare Division is not supported by substantial evidence; appellant Faubion contends that the order applicable to her conflicts with federal provisions. Moreover, each contends that the administrative hearing was deficient under Goldberg v. Kelly, 397 U. S. 254, because questions of law were not considered. The majority affirms the judgment without discussing its bearing on appellants' contention that the Oregon scheme of judicial review discriminates against the poor with respect to an exercise of a fundamental right.
Accordingly, I cannot agree that a "rational justification" will support the Oregon statute as it affects the poor. The primary justification by the State and fixed upon by the majority is the State's interest in offsetting the expenses of its court system. This interest falls far short of the "compelling interest" required to justify a suspect classification or discrimination which infringes on fundamental rights. See Boddie v. Connecticut, supra, at 382; Shapiro v. Thompson, 394 U. S. 618, 633.

II
The majority affirms the judgment below without the benefit of briefs or argument, relying on United States v. Kras, supra. Although I did not join the Court's opinion in Boddie v. Connecticut, supra, I am compelled to comment on the propriety of disposing of this case summarily in view of the decision in that case. However one views the merits of Kras, it seems to me that this case falls far closer to Boddie than Kras.
The majority distinguished Kras from Boddie on three *664 grounds. It is only proper that this case be compared on the same basis.
(1) The majority in Kras concluded that a debtor's desire to obtain a discharge in bankruptcy does not implicate a "fundamental interest." While it is true that our decisions attach less constitutional significance to welfare payments than the interests of the Boddie appellants, we have never decided that there is no constitutional right to judicial review of an adverse administrative determination. The majority also noted in Kras that "[g]aining or not gaining a discharge [in bankruptcy] will effect no change with respect to basic necessities." 409 U. S., at 445. It is clear in this case, however, that appellants suffered an inroad on their ability to subsist.
(2) Unlike Kras, who had a theoretical opportunity to seek relief from his creditors in a nonjudicial accommodation, appellants' only avenue of relief lies in the courts.
(3) Unlike Kras, who was afforded the opportunity to pay the bankruptcy filing fee in installments over six months, appellants must file their fee in a lump sum.
MR. JUSTICE BRENNAN, dissenting.
Although I am in substantial agreement with my Brothers DOUGLAS and MARSHALL that this case is distinguishable from our recent decision in United States v. Kras, 409 U. S. 434 (1973), I see no reason to set this case for argument in light of the majority's firmly held view that Kras is controlling. On the merits, I would reverse for the reasons stated in my separate opinion in Boddie v. Connecticut, 401 U. S. 371, 386 (1971) (concurring in part). See also United States v. Kras, supra, at 457 (opinion of DOUGLAS and BRENNAN, JJ.).
*665 MR. JUSTICE MARSHALL, dissenting.
I adhere to my dissenting opinion in United States v. Kras, 409 U. S. 434, 458 (1973), and would reverse the judgment on that basis. But even were I to accept the majority position in Kras, there are still important differences between that case and this one which, in my judgment, require that this case be set for argument.
In Kras, the majority correctly noted that "[t]here is no constitutional right to obtain a discharge of one's debts in bankruptcy." Id., at 446. Therefore, the only issue in the case was whether the Government could, on the basis of a de facto wealth classification, limit access to a remedy which it could concededly deny altogether.
The question here is quite different. Appellants seek a judicial remedy for the action of an administrative agency which deprived them of a pre-existing right. As my Brother DOUGLAS demonstrates, it is at very least doubtful that the Due Process Clause permits a State to shield an administrative agency from all judicial review when that agency acts to revoke a benefit previously granted.[*] I share the view of Mr. Justice Brandies that "[t]he supremacy of law demands that there shall be opportunity to have some court decide whether an erroneous rule of law was applied; and whether the proceeding in which facts were adjudicated was conducted *666 regularly." St. Joseph Stock Yards Co. v. United States, 298 U. S. 38, 84 (1936) (concurring opinion). Cf. Yakus v. United States, 321 U. S. 414 (1944); Crowell v. Benson, 285 U. S. 22 (1932).
That opportunity was denied in this case, and important benefits were thereby taken from appellants without affording them a chance to contest the legality of the taking in a court of law. Cf. Fuentes v. Shevin, 407 U. S. 67 (1972).
The extent to which the State may commit to administrative agencies the unreviewable authority to restrict pre-existing rights is one of the great questions of constitutional law about which courts and commentators have debated for generations. See generally Hart, The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic, 66 Harv. L. Rev. 1362 (1953); 4 K. Davis, Administrative Law Treatise § 28.18 (1958). Because I am not ready to decide that question summarily, sub silentio, and without the benefit of full briefing and oral argument, I must dissent from the Court's decision.
NOTES
[1] The Division found that the county agency "acted within its discretion by determining that the claimant's living arrangement represented a living situation in which shelter and expenses are shared." The agency's order explained that that reduction in the room and board allowance was proper because "[t]he eligibility of recipients who share shelter with non-recipients, and do not pay for room and board, shall be determined on a share/fraction basis at [Public Welfare Division] standards." Record 9. In his petition for review, Ortwein contended that the order was not supported by "reliable, probative and substantial evidence in the whole record."
[2] Faubion received an incentive training allowance of $120 per month for approximately five months from a program under the Manpower Development and Training Act of 1962, as amended, 76 Stat. 23, 42 U. S. C. §§ 2571-2574. Record 12. Faubion also was receiving over $210 per month through a state-administered AFDC program. Jurisdictional Statement 4; Record 11. States, in making their income calculations under AFDC, deduct from gross income all expenses "reasonably attributable" to the earning of the income. 42 U. S. C. § 602 (a) (7); 45 CFR § 233.20 (a) (3) (iv) (Sept. 1972). Faubion claimed that she had work-training expenses of $20 per month for essential clothing and grooming, of $20 per month for lunches on the job, of $30 per month for convenience-foods for family use made necessary because of her job, of $5 per month for oil, tune-ups and repairs, and of $5 per month for miscellaneous school supplies. Record 13. Although the Division allowed some deductions, it determined that the remaining expenses were not "reasonably attributable" to the training program. Record 12. On appeal, Faubion sought to challenge this finding.
[3] See also Huffman v. Boersen,406 U. S. 337 (1972).
[4] These evidentiary hearings, of course, must meet the minimal requirements of due process. Goldberg v. Kelly, 397 U. S. 254, 266-271 (1970). Appellants have alleged that the hearings were deficient in several ways, Jurisdictional Statement 9-10, but neither the record nor the opinion of the Oregon court provides support for these contentions.
[5] Appellants also claim a violation of their First Amendment right to petition for redress. Our discussion of the Due Process Clause, however, demonstrates that appellants' rights under the First Amendment have been fully satisfied.
[*] The majority's statement that "[t]his Court has long recognized that, even in criminal cases, due process does not require a State to provide an appellate system," ante, at 660, is thus true, but irrelevant and misleading. The cases cited by the majority all involve efforts to secure appellate review of a decision by a lower court. Here, in contrast, no court has ever examined appellants' claims on the merits. Appellants assert only that they must have some access to some court to contest the legality of administrative action adversely affecting them.