528 A.2d 1060

Purcell Bronson, Petitioner *v.* Francis R. Filipi, et al., Respondents.

Submitted on briefs April 8, 1987, before Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Purcell Bronson*, petitioner, for himself.

*LeRoy S. Zimmerman*, Attorney General, with him, *Thomas B. York*, Deputy Attorney General, and *Andrew S. Gordon*, Chief Deputy Attorney General, Chief of Litigation Section, for respondents.

OPINION BY SENIOR JUDGE BARBIERI, July 23, 1987:

Petitioner, Purcell Bronson, filed a petition for review invoking this Court's original jurisdiction pursuant to Section 761 of the Judicial Code, 42 Pa. C. S. §761, seeking declaratory relief against several named respondents,[1] all of whom are Assistant Attorneys General of this Commonwealth. Respondents have filed preliminary objections to the petition for review in which they challenge the sufficiency of the service of the petition, Bronson's standing; and a general demurrer to the petition. It is respondents' preliminary objections that are before this Court.

A brief recitation of the factual background of Bronson's petition is helpful in disposing of the preliminary

---

[1] Francis R. Filipi; Joel M. Ressler; Joseph S. Sabadish; Amy Zapp; and Frank P. Tuplin.

objections. Bronson has apparently filed a number of lawsuits in federal court alleging various civil rights violations against employees and officials of the Commonwealth's Department of Corrections (Department). Bronson is currently an inmate at a state correctional institution under the jurisdiction of the Department. The named respondents have all entered their appearances in federal court on behalf of the defendant-employees and officials in federal court. By this action, Bronson seeks declaratory relief from this Court that under the Commonwealth Attorney's Act, Act of October 15, 1980, P.L. 950, 71 P.S. §§732-101—732-506, the Attorney General's Office has no statutory duty to represent Commonwealth employees or officials in civil rights actions. Bronson also alleges that the Attorney General's Office should represent *him* in his civil rights suits against the defendant-employees and officials of the Department.

Respondents initially challenge the method by which Bronson served his petition for review upon them. It is undisputed that the petition was served upon respondents by first class mail. Respondents contend that service by first class mail is ineffective to invoke the jurisdiction of this Court and obtain personal jurisdiction over them. We agree.

Service of process under this Court's original jurisdiction is governed by the Rules of Appellate Procedure. *Philadelphia County Intermediate Unit No. 26 v. Department of Education,* 60 Pa. Commonwealth Ct. 546, 432 A.2d 1121 (1981). The requirements for service of process are found in Pa. R.A.P. 1514(c), which requires service upon each individual respondent either in person or by certified mail. In *Feigley v. Jeffes,* 97 Pa. Commonwealth Ct. 583, 510 A.2d 385 (1986), we specifically held that service of a petition for review invoking this Court's original jurisdiction by first class

mail is not authorized by Pa. R.A.P. 1514(c) and is insufficient to vest this Court with jurisdiction over the named respondents. *Id.* at 587, 510 A.2d at 386. *See also* 1 R. Darlington, K. McKeon, D. Schuckers & K. Brown, Pa. Appellate Practice §§1514:6 and 1514:7 (1986). Bronson's service of his petition by first class mail is therefore defective service under Pa. R.A.P. 1514(c).

While Bronson concedes his attempted service by first class mail is not in conformity with Pa. R.A.P. 1514(c), he argues that since he is an indigent inmate allegedly without funds to pay for certified mail, we would be violating his rights to due process and equal protection if this Court were to dismiss his petition for failure to make personal service or use certified mail. We do note that this Court entered an order granting Bronson permission to proceed in forma pauperis (IFP) in this matter that excuses him from paying this Court's filing fee of $30. *See* Pa. R.A.P. 2701; 204 Pa. Code §155.1. *See also* 2 R. Darlington, K. McKeon, D. Schuckers & K. Brown, Pa. Appellate Practice §§2701:2 and 2702:5 (1986). We also take judicial notice of the fact that the current fee charged by the United States Postal Service for a certified letter weighing no more than one ounce is $1.45. Additionally, since this is a declaratory judgment action, Bronson had the option of personal service made by any competent adult not a party to the action. *See* Pa. R.C.P. No. 400(b)(1); Pa. R.A.P. 1517. Our review of the case law, along with the balancing of the interests involved, convinces us that requiring an indigent inmate to serve a petition for review either by personal service or by certified mail does not constitute any constitutional deprivation of due process or denial of equal protection.

When determining whether the payment of a filing fee or complying with a rule of procedure constitutes a

denial of due process or equal protection to an indigent, we must evaluate both the indigent's interest in the litigation and balance that interest against the state's interest in ensuring compliance with the rule or payment of the fee. In so doing, we also consider the onerousness of the charge or fee involved. In *Boddie v. Connecticut*, 401 U.S. 371 (1971), the United States Supreme Court held that Connecticut denied indigents due process of law by refusing to permit them to bring divorce actions without the payment of court fees and service of process costs that they are unable to pay. In *Boddie*, the Court made specific note of the basic position of the marital relationship in our society's hierachy of values and the state's monopolization of the means for legally dissolving this relationship. In light of the fundamental interest involved in the marital relationship, and of dissolving it, the Supreme Court concluded that due process prohibits the states from denying, solely on the inability to pay, access to its courts to individuals who seek judicial dissolution of their marriages. *Id.* at 374. The total costs involved in *Boddie* were about $45.00. *Id.* at 373. However, two years later, in *United States v. Kras*, 409 U.S. 434 (1973), the Supreme Court upheld a requirement that an indigent petitioner in voluntary bankruptcy pay the required filing fees, then about $50.00. The Supreme Court noted that there were reasonable alternatives available to allow indigents to pay fees in installments over a six month period, amounting to approximately $1.92 per week and that no fundamental or constitutional right was involved. *Id.* at 446. Later the same year, in *Ortwein v. Schwab*, 410 U.S. 656 (1973), the Supreme Court held that the state of Oregon did not deny indigents any constitutional rights by requiring them to pay a $25 filing fee to appeal an unfavorable decision by the state welfare agency. In *Ortwein*, the Court distinguished the interests involved in the litiga-

tion and found that an indigent who seeks increased welfare payments has a far less constitutionally significant interest than one seeking to dissolve a marriage. *Id.* at 659. The *Ortwein* Court also found that no fundamental interest was involved in the litigation nor was indigency a suspect classification. *Id.* at 660. We are satisfied that this case falls under *Kras* and *Ortwein* rather than *Boddie*. Accordingly, all that needs to be shown in order to uphold the requirement of service either in person or by certified mail is to show a rational relationship between the requirement and a legitimate state objective. *Ortwein; Kras.* We conclude such a relationship does indeed exist.

The two basic requirements of due process as delineated by the United States Supreme Court are notice and an opportunity to be heard. *Goldberg v. Kelly,* 397 U.S. 254 (1970). By requiring service either in person or by certified mail, the judiciary is seeking to ensure that the respondent in a lawsuit or appeal actually receives notice of the pending lawsuit or appeal and is aware that some action is required to protect his or her interests. This is surely a legitimate state objective. By the use of personal service, the petitioner has available a witness who can testify that the respondent actually received the petition in the event service is denied. By the use of certified mail, the petitioner has available a document showing when and where the certified mail document was delivered in the event the respondent denies service was made of the petition. We also note the minimal expense here involved. In order for Bronson to comply with Pa. R.A.P. 1514(c), we calculate it would cost him $7.25.[2] That expense is minimal, even

---

[2] As there are five named respondents, Pa. R.A.P. 1514(c) requires that they be served individually. Thus, Bronson would have to send five certified documents at a cost of $1.45 each for a total cost of $7.25.

to an inmate at a state correctional institution.[3] Additionally, Bronson could have had any competent adult not a party to this action personally serve his petition upon the respondents pursuant to Pa. R.C.P. No. 400(b)(1), an option that may or may not have entailed any cost to him. We therefore find that Pa. R.A.P. 1514(c)'s requirement of personal service or service by certified mail does not violate Bronson's due process or equal protection rights.

We likewise find no violation of Bronson's access to the courts guaranteed by Article 1, §11, of the Constitution of the Commonwealth of Pennsylvania. The minimal cost to Bronson coupled with the alternative method of service by any competent adult and the legitimate interest of the state in ensuring that litigants are properly notified of legal proceedings instituted against them convince us that Bronson's access to the courts for redress of his grievances has not been denied. We thus distinguish the circumstances presented here from those found in *Lutz v. Heasley,* 12 Pa. Dist. 139 (C.P. Clarion 1902), wherein the Court of Common Pleas of Clarion County held that a local court rule requiring insolvent plaintiffs to post security for court costs violated the guarantee to free access to the courts contained in Article 1, §11, of the Pennsylvania Constitution of 1874. Similar provisions were found in Article 9, §11, of the Pennsylvania Constitutions of 1838 and 1790.

---

[3] While Bronson alleges that his prison account is "in the red," we note that the Department has an established policy of permitting inmates with less than $10.00 in their institutional account or any other account may anticipate for postage under a Department Administrative Memorandum dated November 13, 1984. Inmates who are physically able to work but refuse available work within the state correctional institution are not eligible to anticipate postage. *See Waters v. Department of Corrections,* 97 Pa. Commonwealth Ct. 283, 509 A.2d 430 (1986).

In view of the foregoing, Bronson's attempt to serve his petition by first class mail is defective under Pa. R.A.P. 1514(c) and the respondents' preliminary objection as to the sufficiency of that service must be sustained and the petition dismissed. As we have no personal jurisdiction over the respondents due to insufficient service of process, we need not address the other preliminary objections of the respondents.

ORDER

Now, July 23, 1987, upon consideration of the preliminary objections of the respondents to the petition for review, as well as the briefs filed in support of and in opposition thereto, the preliminary objection to the sufficiency of service of the petition for review is hereby sustained and the petition for review is dismissed.