SEIGAFOLAVA R. PENE and
CARMENCITA PENE, Appellants

v.

AMERICAN SAMOA POWER AUTHORITY and
ABE MALAE, Executive Director, Appellees

High Court of American Samoa
Appellate Division

AP No. 3-89

February 21, 1989

Before REES, Associate Justice.

Counsel: Appellants Seigafolava R. Pene and
Carmencita Pene pro se
For Appellees, Robert Dennison, Assistant
Attorney General

On Request for Waiver of Transcript Costs:

Appellants move that the court reporter who recorded the proceeding below be ordered to provide them with a transcript free of charge.

Although the High Court employs court reporters to record all proceedings, such records are necessarily taken in the form of notes that are not decipherable by untrained persons. The translation of a reporter's notes into a typed transcript is a time-consuming process undertaken only when a verbatim record is needed by the Court or by a party.

The Appellate Court Rules provide that parties to criminal actions and to administrative agency proceedings may be given leave to proceed on appeal in forma pauperis if they can establish to the satisfaction of the Court their inability to pay the costs of appeal. Appellate Court Rule 24. In all other cases the rules require that a party who wishes to include part or all of the transcript in the record on appeal must bear the costs of preparing the transcript. Appellate Court Rule 10(b)(4). An order for the preparation of a free transcript in an ordinary civil case such as this one would contravene these rules.

In some circumstances the denial of access to legal proceedings to those unable to pay the costs of such proceedings has been held to deny due

process of law. In <u>Boddie v. Connecticut</u>, 401 U.S. 371 (1971), the United States Supreme Court held that a state may not deny a divorce on the sole ground that the person seeking the divorce action cannot afford to pay a filing fee. In <u>Little v. Streater</u>, 452 U.S. 1 (1981), the Court held that a state could not charge an indigent defendant in a paternity suit for the cost of blood tests where state law effectively required such tests to disprove paternity. In these cases the Court stressed the involvement of a constitutionally protected family relationship and of a state legislative scheme that effectively imposed such a relationship on those who could not afford to sue their way out of it. See <u>Boddie</u>, 401 U.S. at 382-83; <u>Little</u>, 452 U.S. at 13-14.

The <u>Boddie</u> Court specifically refused to find a general right of indigent persons to litigate free of charge. 401 U.S. at 382. Nevertheless, the case was for a time frequently cited in support of a constitutional right of indigents to exemption from costs and fees in cases having nothing to do with divorce or family relationships. Two years after <u>Boddie</u>, however, the Supreme Court decisively denied the existence of such a right for litigants who seek to vindicate interests "in the area of economics and social welfare." <u>United States v. Kras</u>, 409 U.S. 434, 446 (1973); see <u>Ortwein v. Schwab</u>, 410 U.S. 656 (1973).

<u>Kras</u> upheld the constitutionality of filing fees in bankruptcy cases, even in a case where the petitioner could not afford the fee and therefore could not obtain a discharge in bankruptcy. <u>Ortwein</u> rejected a constitutional challenge to filing fees in a proceeding for judicial review of a denial of welfare benefits. In each of these cases the Court rejected a constitutional claim to exemption from fees even though the rights being asserted were of special importance to the indigent. That anyone should be denied welfare or bankruptcy because he is too poor, whether or not it is unconstitutional, is suffused with irony. The proposition that indigents have a general constitutional right to exemption from costs, even in garden variety civil suits lacking the special circumstances that were present in <u>Kras</u> and <u>Ortwein</u>, is clearly inconsistent with the holdings of those cases.

Appellants in the present case, unlike the indigent litigants in Boddie and Little, do not seek to extricate themselves from a family relationship imposed on them by the government. They do not even seek to vindicate, as did the unsuccessful parties in Kras and Ortwein, an interest that is closely connected to their alleged indigence or that might otherwise afford a basis for distinguishing this case from the many others in which prospective litigants are deterred by the cost of litigation. Rather, they demand money: $100,000 for "expenses incurred in bringing [the present] complaint and also suffering mental distress" at having had their electricity turned off for ten days, and $5 million in punitive damages.[1] These are not claims that the Constitution singles out for special protection.

---

[1] Appellants also seek to enjoin the utility permanently from disconnecting their electricity. The record reflects that the electricity was disconnected for about ten days and has been reconnected upon the posting of a bond by appellants. It is undisputed that the electricity was disconnected only because appellants did not pay their bill. They stopped paying their bill not because they claimed they could not afford it, and not because of any dispute having directly to do with the bill itself or with the supply of electricity, but because they believed the utility was in breach of an alleged agreement to "review and respond to" appellants' claims that the utility was wrongfully using certain lands which appellants claim to own.

Even if the electrical consumer/supplier relationship could be analogized to the husband/wife or parent/child relationships for the purpose of exempting indigents from the costs of litigation --- and it probably cannot, since electricity would appear to have more in common with the welfare benefits in Ortwein and the bankruptcy discharge in Kras than with the constitutionally protected associations in Boddie and Little --- a person who voluntarily injects this relationship into a wholly collateral dispute with the electric company would hardly seem entitled to such special protection. The only interests directly asserted by the present appellants are in land and in money.

Moreover, the appellants have already been afforded due process of law in the form, inter alia, of a trial on the merits before the Chief Justice of the High Court, a written opinion by the Chief Justice dealing with the substance of their claims, a hearing on their Motion to Reconsider, and another written opinion on that motion. This is considerably more than was afforded the parties in Kras and Ortwein, who were altogether excluded from judicial proceedings at any level. See Kras, 409 U.S. at 437-38; Ortwein, 410 U.S. at 658. It is well established that "due process does not require a State to provide an appellate system." Ortwein, 410 U.S. at 660 (citations omitted).

Finally, even if appellants cannot afford a transcript their access to the appellate court will not be altogether denied. They remain free to seek the correction of such errors of law as may appear from the facts as found by the trial court. See Appellate Court Rule 10(b)(1). Or they may negotiate with the opposing parties an agreed statement of the evidence in lieu of a transcript. Appellate Court Rule 10(d). (The existence of the possibility of such negotiation, even if "unrealistic . . . in a particular situation," distinguishes ordinary civil cases from those such as divorce and paternity cases in which there is "utter exclusiveness of court access and court remedy." Kras, 409 U.S. at 445.) In the absence of a transcript or an agreed statement appellants lose only the right to urge that the trial court's findings were unsupported by the evidence. Appellate Court Rule 10(b)(2). In light of the strong presumption that the appellate court should uphold the fact findings of the trial court, this loss is in most cases a relatively trivial one.[2]

----

[2] In the present case appellants do challenge the fact findings of the trial court. These challenges are detailed in a rambling eight-page paragraph in which appellant S.R. Pene quotes portions of the trial court's decision, interspersed at frequent intervals with the reminder that "I DISAGREED!" (capitalization and punctuation in original), and reiterates the testimony he gave at trial. As nearly as can be discerned, the disagreements are overwhelmingly directed to the trial court's acceptance of the

See <u>Fagaima v. Fonoti</u>, 3 A.S.R.2d 112 (1986); <u>Leomiti v. Pagofie</u>, 2 A.S.R.2d 97 (1986).

For these reasons, the rule that appellants must bear the costs of preparing such transcripts as are necessary to establish their contentions on appeal is clearly not unconstitutional. Appellants' motion is therefore denied.

Appellants shall request an estimate of the cost of the transcript from the court reporters within five days, or if they decide to proceed without a transcript shall comply with the provisions of Appellate Court Rule 10(b)(3) within ten days.

It is so ordered.

<hr/>

testimony of other witnesses over that of Mr. Pene, or to conclusions the court drew from the evidence.

Appellants also maintain that the trial judge was biased against Mr. Pene and should have recused himself. This argument appears to be based on facts that are outside the record of this case. It would appear to necessitate a transcript only of the brief exchange in which Mr. Pene says he moved for recusal and the judge denied the motion.