**Emma WATSON, individually and as next friend of D.J.W.B., et al.**

v.

**Gregory HORTMAN, M.D., et al.**

**No. 2:08–CV–81–TJW–CE.**

United States District Court,
E.D. Texas,
Marshall Division.

March 27, 2012.

Robert S. Peck (argued), Andre M. Mura (argued), Stephen B. Pershing, Valerie M. Nannery, Center for Constitutional Litigation, P.C., Washington, D.C., Jack B. Baldwin, Baldwin & Baldwin, L.L.P., Marshall, TX, for Plaintiffs.

Michael S. Hull, Andrew F. MacRae, Hull Henricks & MacRae LLP, Austin, TX, Thomas R. Phillips, Kennon L. Peterson, Baker Botts LLP, Austin, TX, R. Brent Cooper (argued), Diana L. Faust, Cooper & Scully, P.C., Dallas, TX, for Defendants.

James C. Ho (argued), Solicitor General of Texas, Daniel L. Geyser (argued), Assistant Solicitor General, Austin, TX, for the State of Texas as Intervenor–Defendant.

## ORDER

RODNEY GILSTRAP, District Judge.

On March 12, 2009, Magistrate Judge Charles Everingham issued a Report and Recommendation, urging this Court to grant-in-part and deny-in-part Defendants' motions to dismiss (Dkt. No. 66.) On March 31, 2009, 2009 WL 900744, the Court overruled the parties' objections to the Report and Recommendation (Dkt. No. 69), and on February 15, 2012, the Court denied Plaintiffs' Motion for Reconsideration (Dkt. No. 158.)

. On September 13, 2010, Magistrate Judge Charles Everingham issued a Report and Recommendation, urging this Court to deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Motion for Summary Judgment (Dkt. No. 138.) On September 27, 2010, Plaintiffs filed objections to the same (Dkt. No. 142), to which Defendants' response followed on October 29, 2010 (Dkt. No. 148.)

Upon considering the September 13 Report and Recommendation and the objections thereto, the Court hereby OVERRULES such objections and ADOPTS the Report and Recommendation in accordance with the reasons set forth in the same.

Accordingly, it is hereby ORDERED and ADJUDGED that all claims by Plaintiffs in this matter are DENIED and this case is hereby DISMISSED WITH PREJUDICE.

## *REPORT AND RECOMMENDATION*

CHARLES EVERINGHAM IV, United States Magistrate Judge.

### I. Introduction

The above-referenced case was referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636. Pending before the court are the plaintiffs' motion for final summary judgment (Dkt. No. 74), the defendants' motion for summary judgment (Dkt. No. 76), and the State of Texas's ("State") cross-motion for summary judgment (Dkt. No. 88). The plaintiffs seek summary judgment that the state statute at issue, the Medical Malpractice and Tort Reform Act of 2003, violates both their constitutional right of access to the courts and the Takings Clause of the Fifth Amendment. The defendants and State request summary judgment that the statute is not unconstitutional. For the reasons presented below, the undersigned recommends DENYING the plaintiffs' motion for summary judgment and GRANTING the defendants' and the State's motions for summary judgment.

### II. Factual Background & Procedural Posture

The Texas Legislature enacted the Medical Malpractice and Tort Reform Act of 2003 ("H.B.4"), Texas Civil Practice & Remedies Code Ann. § 74.301 *et seq.*, in part to limit the recovery of noneconomic damages in medical malpractice suits. The relevant portion of the law provides:

(a) In an action on a health care liability claim where final judgment is rendered against a physician or health care provider other than a health care institution, the limit of civil liability for noneconomic damages of the physician or health care provider other than a health care institution, inclusive of all persons and entities for which vicarious liability theories may apply, shall be limited to an amount not to exceed $250,000 for each claimant, regardless of the number of defendant physicians or health care providers other than a health care institution against whom the claim is asserted or the number of separate causes of action on which the claim is based.

(b) In an action on a health care liability claim where final judgment is rendered against a single health care institution, the limit of civil liability for noneconomic damages inclusive of all persons and entities for which vicarious liability theories may apply, shall be limited to an amount not to exceed $250,000 for each claimant.

(c) In an action on a health care liability claim where final judgment is rendered against more than one health care institution, the limit of civil liability for noneconomic damages for each health care institution, inclusive of all persons and entities for which vicarious liability theories apply, shall be limited to an amount

not to exceed $250,000 for each claimant and the limit of civil liability for noneconomic damages for all health care institutions, inclusive of all persons and entities for which vicarious liability theories may apply, shall be limited to an amount not to exceed $500,000 for each claimant. Tex. Civ. Prac. & Rem.Code Ann. § 74.301 (Vernon 2005).

On February 25, 2008, the plaintiffs filed suit in this court seeking a declaratory judgment that H.B. 4 violates the United States Constitution. The plaintiffs consist of individuals who have allegedly been injured by medical malpractice or who are legal representatives of those who have been injured. The defendants are various medical providers.[1] After this suit was filed, the State intervened to defend the constitutionality of H.B. 4.

The undersigned previously recommended the dismissal of the plaintiffs' equal protection and due process claims, and the district court adopted that recommendation. (Dkt. Nos. 66, 70). The parties filed cross-motions for summary judgment on the remaining issues.

For purposes of the cross-motions for summary judgment, the plaintiffs allege that H.B. 4 violates medical malpractice victims' constitutional rights in two ways. First, the plaintiffs contend that the H.B. 4 cap violates their right of access to the courts. Second, the plaintiffs assert that the H.B. 4 cap violates the Takings Clause. The undersigned will address each contention in turn.

## III. Discussion

### A. Standard of Review for Facial Challenge

■ The plaintiffs present a facial challenge to the constitutionality of H.B. 4. "In general, to mount a successful facial attack, 'the challenger must establish that no set of circumstances exists under which the Act would be valid.'" *Ctr. for Individual Freedom v. Carmouche,* 449 F.3d 655, 662 (5th Cir.2006) (quoting *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)).

### B. Right of Access to the Courts

The plaintiffs present two bases for their contention that H.B. 4 infringes upon their right of access to the courts. First, by restricting the amount of noneconomic damages found by the jury, the statute allegedly deprives health care liability plaintiffs of a full and complete remedy. Second, according to the plaintiffs, the limitation on noneconomic damages renders cases uneconomical to pursue in court and deprives the plaintiffs of adequate legal counsel to pursue their medical malpractice claims.

#### 1. Whether H.B. 4 Violates the Right of Access by Denying a Full and Complete Remedy

■ The plaintiffs contend that H.B. 4's limitation on damages leaves them without an "adequate, effective, and meaningful" remedy at law, and thus violates their constitutional right of access to the courts. *See Bounds v. Smith,* 430 U.S. 817, 822, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). But the cases cited by the plaintiffs are factually distinguishable from a challenge to a damages limitation like the one at issue. *See Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491 (requiring that prisons provide legal assistance to inmates for appeals and habeas petitions); *Bayou Fleet v. Alexander,* 234 F.3d 852, 857 (5th Cir.2000) (alleging that a law clerk effectively presided over a trial); *Ryland v. Shapiro,* 708 F.2d 967,

---

1. The court previously dismissed claims against state court judges. *See* Dkt. Nos. 66 & 70.

969 (5th Cir.1983) (alleging that state officials concealed and prevented investigation of murder).

In *Ryland,* for example, the plaintiffs were allegedly prevented from filing a wrongful death suit in a Louisiana state court. The Fifth Circuit held that the plaintiffs stated a civil rights claim against the defendants for interfering with the plaintiffs' ability to pursue the state court lawsuit. *Ryland* did not address a statute like the one in this case that curtails the damages recoverable under a cause of action. The plaintiffs provide no legal authority suggesting that a law like the one at issue in this case violates the right of access to the courts because it limits the amount of damages recoverable in a health care liability claim. The Supreme Court has stated that "statutes limiting liability are relatively commonplace and have consistently been enforced by the courts." *Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 88 n. 32, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). As such, the undersigned is not persuaded that H.B. 4's cap on recovery denies medical malpractice victims an "adequate, effective, and meaningful" legal remedy.

### 2. Whether H.B. 4 Violates the Right of Access by Rendering Cases Uneconomical to Pursue

The plaintiffs also argue that H.B. 4's damages limitation forecloses access to the courts as a practical matter, because it renders the pursuit of some health care liability claims uneconomical. According to the plaintiffs, the costs to litigate a medical malpractice suit are extraordinary, and the limitation on noneconomic damages presents a financial barrier to some claimants who attempt to access the courts. Under the plaintiffs' theory, a potentially smaller jury award results in a contingent fee that is insufficient to pay for qualified medical malpractice attorneys and experts. In support of their argu-

ment, the plaintiffs cite survey data indicating that fewer Texas lawyers are accepting medical malpractice suits after the H.B. 4 cap was enacted. Stephen Daniels & Joanne Martin, *Texas Plaintiffs' Practice in the Age of Tort Reform: Survival of the Fittest–It's Even More True Now,* 51 N.Y.L. Sch. L.Rev. 285, 312–13 (2007).

Although the damages limitation may present a financial barrier to the prosecution of at least some medical malpractice claims, the Supreme Court has addressed similar questions in the context of generally applicable filing fees or court costs that operate disproportionately against indigent plaintiffs. The standard by which those filing fees are evaluated is commensurate with the importance of the underlying right being litigated. *See Carson v. Johnson,* 112 F.3d 818, 821 (5th Cir.1997) (quoting *M.L.B. v. S.L.J.,* 519 U.S. 102, 113, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996)) ("In the civil context, the test is whether the litigant has a 'fundamental interest at stake.' "). In judicial proceedings that implicate fundamental rights, such as divorces, *Boddie v. Connecticut,* 401 U.S. 371, 376, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), and termination of parental rights, *M.L.B.,* 519 U.S. at 125, 117 S.Ct. 555, the Supreme Court has reviewed the constitutionality of fee requirements under a strict scrutiny standard. *See M.L.B.,* 519 U.S. at 116–17, 117 S.Ct. 555; *Boddie,* 401 U.S. at 381, 91 S.Ct. 780. On the other hand, in cases where fundamental rights are not at stake, such as bankruptcy filings, *United States v. Kras,* 409 U.S. 434, 444, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), and welfare benefit determinations, *Ortwein v. Schwab,* 410 U.S. 656, 659, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973), a fee restriction will be upheld if it meets the rational basis test. *See Ortwein,* 410 U.S. at 660, 93 S.Ct. 1172; *Kras,* 409 U.S. at 447, 93 S.Ct. 631.

■ In this case, the underlying right affected by the legislation is the right to recover on a health care liability claim. The Fifth Circuit has held that the "right to recover for medical malpractice does not fall within the fundamental interests recognized by the Supreme Court." *Clifford v. Louisiana,* 347 Fed.Appx. 21, 23 (5th Cir.2009); *see also Seoane v. Ortho Pharm., Inc.,* 660 F.2d 146, 150–51 (5th Cir.1981) (upholding Louisiana's medical review panel legislation under a right of access analysis). Thus, rational basis review applies to the plaintiffs' right of access claim.

■ H.B. 4 meets the rational basis test because the plaintiffs have not shown that the damages cap is clearly arbitrary and irrational. *See Hodel v. Indiana,* 452 U.S. 314, 331–32, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981). The cap on noneconomic damages is reasonably related to the State of Texas's goals of reducing malpractice insurance premiums and improving access to care. *See id.* at 331, 101 S.Ct. 2376 (explaining that, under the rational basis test, challenged legislation must be upheld if it is "rationally related to a legitimate government purpose"). Although the plaintiffs put forth a variety of statistical evidence and studies to challenge the Texas Legislature's findings, this evidence is insufficient to show that the legislation lacks a rational basis, particularly in light of the record that was before the Legislature at the time of the adoption of H.B. 4. Thus the defendants and the State are entitled to summary judgment that H.B. 4 does not violate the plaintiffs' right of access to the courts.

## C. Takings Clause

The plaintiffs assert that H.B. 4 violates the Takings Clause of the Fifth Amendment. According to the plaintiffs, the state effectively "commandeer[s]" medical malpractice plaintiffs' fair and proper compensation for noneconomic injuries that exceed the damages limitations.

### 1. Vested Property Interest

■ To prove that an unconstitutional taking has occurred, the plaintiffs must first prove the existence of a vested property interest. *Landgraf v. USI Film Prods.,* 511 U.S. 244, 266, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). The Takings Clause prevents the government from "depriving private persons of *vested* property rights." *Id.* (emphasis added). Without a vested property interest, the plaintiffs cannot establish that H.B. 4 takes their property without just compensation.

■ The plaintiffs contend they have vested property rights in their causes of action.[2] The Constitution itself does not create property rights; instead, property rights must stem from an independent source, such as state law. *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1001, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984). As such, this court must determine whether the plaintiffs' alleged vested property rights are recognized under Texas law. *See generally Phillips v. Washington Legal Found.,* 524 U.S. 156, 164, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998) (applying Texas law to analyze property rights in takings claim).

■ The plaintiffs contend that they had an interest in the full, uncapped value

---

**2.** The plaintiffs also advance a theory that they have a property interest in their "bodily integrity," and H.B. 4 effectuates a taking of that property. But the plaintiffs cite no Texas law recognizing a property interest like the one they advance. Nor do they identify any federal case law that supports this argument. Therefore, the undersigned does not find that the plaintiffs have any vested property interest in bodily integrity subject to taking by the damages cap.

of the noneconomic damages resulting from medical malpractice. But the plaintiffs who suffered injury after the effective date of H.B. 4 have no vested property interest. At best, they allege a vested interest in the continuation of that law which allowed them to recover unlimited noneconomic damages. This argument is foreclosed by *Lucas v. United States*, 807 F.2d 414, 421–22 (5th Cir.1986). *Lucas* relied on the Supreme Court's statement in *Duke Power* that "a person has no property, no vested interest, in any rule of the common law." *Duke Power*, 438 U.S. at 88, 98 S.Ct. 2620. Accordingly, the plaintiffs who were injured after the effective date of H.B. 4 have no takings claim.

At least one of the plaintiffs suffered injuries prior to the effective date of H.B. 4. The plaintiffs argue that Texas law recognizes an accrued cause of action as a vested property right. Texas law concerning vested rights has been described charitably as "difficult." *See generally Vaughn v. Fedders Corp.*, 239 Fed.Appx. 27, 33 (5th Cir.2007). Texas cases most often discuss the vested rights concept in the context of retroactive legislation.[3] Some Texas cases, exemplified by *Ex parte Abell* and the *City of Dallas v. Trammell*, suggest that individuals have no vested rights to expectancies based upon continuance of existing law. In *Abell*, Texas Supreme Court explained:

> This Court in *City of Dallas v. Trammell* considered the question of whether a retired policeman had a vested right to the full amount of his pension. We there held that the Legislature had the power to reduce the pension since a policeman has no vested right to that which constitutes a mere expectancy based upon anticipated continuance of

existing law. Even though the right of the policeman to receive a pension became vested when the contingency occurred that entitled him to receive a pension, he had no vested right to a fixed sum of money.

613 S.W.2d 255, 261–62 (Tex.1981) (citing *Trammell*, 129 Tex. 150, 101 S.W.2d 1009 (1937)) (citations omitted). *Abell* stated further that "a right cannot be considered a vested right unless it is something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws; it must have become a title, legal or equitable to the present or future enjoyment of a demand or a legal exemption from the demand made by another." *Id.* at 261.

■ Under these cases, a party has no vested rights in a cause of action until she obtains a final, unreviewable judgment. *See Houston Ind. Sch. Dist. v. Houston Chronicle Pub. Co.*, 798 S.W.2d 580, 589 (Tex.App.-Houston [1st Dist.] 1990, writ denied). Although *Abell* and *Trammell* might be distinguished because they involved changes to procedural (*Abell*) or statutory (*Trammell*) laws, at least one Texas intermediate court has required a final judgment as a prerequisite to a vested right in a common law cause of action. *Walls v. First State Bank of Miami*, 900 S.W.2d 117, 122 (Tex.App.-Amarillo 1995, writ denied) ("Consequently, only final, unreviewable judgments will be accorded the dignity of vested, constitutionally guarded rights"). Applying these holdings, a plaintiff injured before the effective date of H.B. 4 but who has not received a final judgment could be compared to the retired policeman in *Trammell*. Although the plaintiff has some property interest in an

---

3. One recent Texas intermediate court of appeals addressed this issue. *Robinson v. Crown Cork & Seal Co., Inc.*, 251 S.W.3d 520 (Tex.App.-Houston [14th Dist.] 2006, pet. granted). The Texas Supreme Court heard argument in this case on February 7, 2008, and the matter remains under submission.

accrued cause of action, the plaintiff has no vested right to a particular award-including unlimited noneconomic damages-until such time as the plaintiff obtains a final judgment.

 Other cases suggest that a party may have a vested right in an accrued cause of action even before it is reduced to judgment. In *Mellinger v. City of Houston*, 68 Tex. 37, 3 S.W. 249 (1887), the Court stated that:

When [ ] such a state of facts exists as the law declares shall entitle a plaintiff to relief in a court of justice on a claim which he makes against another, or as it declares shall operate in favor of a defendant as a defense against a claim made against him, then it must be said that a right exists, has become fixed or vested....

*Id.* at 46, 3 S.W. 249. Under *Mellinger*, a plaintiff who was injured before the effective date of H.B. 4 arguably has a vested interest in an accrued health care liability claim, even before the claim is reduced to judgment. As such, the claim would be subject to a Takings Clause analysis. Therefore, the undersigned will analyze whether H.B. 4's cap on noneconomic damages is an unconstitutional taking.

### 2. Penn Central Analysis

 It is well-settled that not all governmental regulation that reduces the value of a property interest constitutes a compensable taking. In *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), the Supreme Court announced a three-prong test to assess whether a governmental regulation constitutes a compensable taking. The test examines (1) the economic impact on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action. *Id.* at 124, 98 S.Ct. 2646. Consideration of these factors

causes the undersigned to conclude that no taking has occurred.

 In the context of this case's factual posture, evaluation of the first factor is speculative, because the undersigned must judge the economic impact on the claimant by reference to the value of the malpractice claim as a whole. "To the extent that any portion of property is taken, that portion is always taken in its entirety; the relevant question, however, is whether the property taken is all, or only a portion of, the parcel in question." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 644, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993). So viewed, the damages limitation affects only a portion of a plaintiff's claim-the ability to recover noneconomic damages. The challenged legislation has not deprived a plaintiff of the entire value of the claim. Additionally, because none of the plaintiffs has recovered a jury verdict, they are unable to show how significantly H.B. 4 affects them.

Second, the challenged regulation cannot fairly be said to interfere with distinct investment-backed expectations. Unlike traditional takings cases involving real property, the plaintiffs in this case have not established that they had any distinct investment-backed expectations to recover uncapped noneconomic damages for their health care liability claims. Although the plaintiffs argue that a person with an accrued cause of action expects to recover the full amount of any jury award for noneconomic damages, the type of damages at issue are inherently difficult to predict with any certainty. Consequently, this factor does not support a finding that a taking has occurred.

Third, the character of the governmental action does not support a conclusion that a taking has occurred. In this case, the State has not appropriated any of the

plaintiffs' property to its own use. Rather, by limiting the amount of noneconomic damages in H.B. 4, the State has enacted legislation in an effort to "adjust the benefits and burdens of economic life to promote the common good." *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 225, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986). In short, the *Penn Central* factors counsel the undersigned to conclude that no taking has occurred in this case.[4]

It bears mention that the Fifth Circuit has rejected substantive due process challenges to similar legislation involving medical malpractice damages limitations. *Lucas*, 807 F.2d 414. The Supreme Court has implied a relationship between due process and takings causes of action, in that if a party's "due process arguments are unavailing, 'it would be surprising indeed to discover' the challenged statute nonetheless violating the Takings Clause." *Concrete Pipe*, 508 U.S. at 641, 113 S.Ct. 2264 (quoting *Connolly*, 475 U.S. at 223, 106 S.Ct. 1018). That observation applies equally to this case. Thus, the undersigned concludes that the limitations imposed by H.B. 4 do not violate the Takings Clause.

## IV. Conclusion

The plaintiffs have not shown that the challenged statute, H.B. 4, violates their constitutional right of access to the courts or the Takings Clause. Therefore, the undersigned ·recommends DENYING the plaintiffs' motion for summary judgment and GRANTING the defendants' and State's motions for summary judgment.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report

within fourteen days after being served with a copy shall bar that party from de novo review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings, and legal conclusions accepted and adopted by the district court. Fed. R.Civ.P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).

---

4. Neither side has addressed whether *Hodel v. Virginia Surface Mining & Reclamation Association, Inc.*, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981) might apply. Because the undersigned concludes that H.B. 4 does not

effectuate an unconstitutional taking under *Penn Central*, there is no need to analyze the plaintiff's claim under the more stringent *Hodel* facial challenge analysis.