**William Clifton LEWIS, Petitioner,**

v.

**Michael SULLIVAN, Secretary, Wisconsin Department of Corrections, Respondent,**

and

**United States of America, Intervenor.**

No. 00–C–705–C.

United States District Court, W.D. Wisconsin.

March 2, 2001.

William C. Lewis, Waupun, WI, pro se.

Robert A. Selk, Assistant Attorney General, Madison, WI, Peggy A. Lautenschlager, United States Attorney, Western District of Wisconsin, Madison, WI, for Michael J. Sullivan.

John Schumann, Trial Attorney, U.S. Dept. of Justice-Civil Div., Washington, DC, for United States of America.

## OPINION AND ORDER

CRABB, District Judge.

Petitioner William Clifton Lewis is challenging the constitutionality of the Prison Litigation Reform Act's "three strikes" provision, 28 U.S.C. § 1915(g), which bars a prisoner from proceeding *in forma pauperis* if he has had three prior actions dismissed because they were frivolous, malicious or failed to state a claim upon which relief might be granted, unless the prisoner is in imminent danger of serious physical injury. Petitioner is an inmate at Waupun Correctional Institution in Waupun, Wisconsin. His proposed complaint is brought against respondent Michael Sullivan pursuant to 42 U.S.C. § 1983 because, he contends, respondent has violated his Eighth Amendment rights by denying him

needed treatment for the post traumatic stress disorder from which he suffers. (Since petitioner first tried to assert this claim, Michael Sullivan has been replaced as Secretary by Jon Litscher. Secretary Litscher will be substituted for Sullivan, pursuant to Fed.R.Civ.P. 25(d).)

Petitioner is indigent. The $150 filing fee exceeds 20% of the average monthly deposits to his prison account and 20% of the average monthly balance in his account, *see* 28 U.S.C. § 1915(b). However, on at least three prior occasions in the past thirteen years, petitioner has been denied leave to proceed *in forma pauperis* in this district in lawsuits deemed to be legally frivolous. *See Lewis v. Goodrich*, 88–C–1101, decided December 28, 1988; *Lewis v. Eisenga*, 91–C–1048–C, decided December 20, 1991; and *Lewis v. Coleman*, 93–C–491–C, decided August 3, 1993. He is not alleging in his present complaint that he is in imminent danger of physical injury. Therefore, if § 1915(g) is constitutional, he may not proceed with his complaint unless he prepays the entire $150 filing fee.

Petitioner contends that § 1915(g) violates his equal protection and due process rights under the Fifth Amendment to the Constitution by preventing indigent prisoners like him from exercising their fundamental right of access to the courts. He argues that it violates equal protection in two ways: by treating indigent prisoners differently from non-indigent ones and by treating indigent prisoners differently from indigent non-prisoners. He argues that it violates his right to procedural due process because it denies him a federal court forum for his challenge to the allegedly unconstitutional conditions of his confinement and it denies his right to substantive due process because it operates in an irrational and arbitrary means way and creates an irrebuttable presumption.

Because petitioner is challenging the constitutionality of a United States statute, the United States was notified, as 28 U.S.C. § 2403 requires. It filed a motion to intervene, which was granted, and it has submitted briefs in opposition to petitioner's challenge to § 1915(g). Both the United States and respondent object to petitioner's request that the court evaluate his complaint for merit and ignore the restriction imposed by 28 U.S.C. § 1915(g). They contend that § 1915(g) is constitutional because it is related rationally to the legitimate governmental end of deterring frivolous prisoner lawsuits.

I conclude that § 1915(g) is unconstitutional unless it is interpreted as applying only to successive lawsuits that do not raise a substantial constitutional claim. If it is read to prohibit indigent prisoners from raising claims involving their fundamental constitutional rights, it constitutes an unconstitutional restriction on their right of access to the courts. Although the federal government has a legitimate interest in deterring the filing of frivolous and malicious lawsuits, it has no legitimate interest in preventing the filing of potentially meritorious claims of violations of fundamental constitutional rights.

### RECORD FACTS

Petitioner's trust fund account statement for the period May 20, 2000 to November 21, 2000 shows that the average monthly deposits to his account were $106.35, $98.00 of which came from a Department of Veterans Affairs disability check; his average monthly balance was $6.47. He had $500 in his release account as of November 21, 2000.

The present suit is a new version of a suit petitioner filed in 1998, 98–C–0789–C, in which he alleged that he was being denied treatment for his post traumatic stress syndrome. He contended that the denial violated his rights under the Eighth Amendment and the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213. He alleged also that he had been designated for transfer to an out-of-state correctional facility, where he would have even less chance of receiving the treatment he needs. Petitioner's first case was dismissed under § 1915(g) because petitioner had had three previous cases dismissed as frivolous and was not alleging imminent danger of physical injury. After petitioner moved for reconsideration challenging the constitutionality of § 1915(g), I appointed counsel to represent him on that issue, but then dismissed the case after the issue was fully briefed when it became apparent that petitioner had not exhausted his administrative remedies before filing in this court. Petitioner filed a motion to reopen his suit in 2000, alleging that he had exhausted his administrative remedies. In an order entered on October 26, 2000, I suggested to petitioner that he file an entirely new suit to avoid the inevitable ruling that his previous suit could not go forward because he had not exhausted his administrative remedies *before* he filed his suit. *See Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 534 (7th Cir.1999). Petitioner adopted the suggestion and this suit followed. Petitioner is raising the same issues he raised in his 1998 suit. The parties were given an opportunity to file briefs to supplement those they had filed in the first suit, but only the United States did so.

### OPINION

The statute at issue, 28 U.S.C. § 1915, provides in subsection (g) as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained

in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

## A. *Petitioner's Standing*

■ In order to pursue a challenge to § 1915(g), petitioner must establish that he has standing, that is, he "must allege personal injury fairly traceable to the challenged action." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Persons alleging denial of access to the court cannot speculate that they will be denied access to the court; they must show with specificity how they have been hindered in their ability to pursue a legal claim. *See Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

Petitioner has made the necessary showing. He cannot even file his constitutional challenge to the prison's alleged failure to provide him essential medical services except by paying a fee that exceeds his entire monthly income. He cannot use any portion of the $500 in his release account for a filing fee because Wis.Admin.Code § DOC 309.466 prohibits disbursements from an inmate's release account for any purpose other than the purchase of adequate clothing for release and for out-of-state release transportation. (One additional exception exists but it is of no use to petitioner if he is not allowed to proceed. If an inmate is required to make an initial partial filing fee, the state has taken the position that § 1915(g) supersedes the department's regulation and requires the prison to deduct the amount of the initial fee from the release account if the inmate has no other means of paying it.)

Petitioner argues that having to pay a fee in excess of his monthly income is an injury he would not suffer if he were not a prisoner and subject to § 1915(g). If he were a non-prisoner and indigent, he could bring a federal lawsuit without paying any fee at all, given his meager financial resources. Alternatively, if he were suing as a prisoner who was not subject to § 1915(g), he would be required to pay an initial partial filing fee of only 20% of 1) the greater of the average monthly deposits to his prison account or 2) the average monthly balance in his account for the preceding six months, which in his case would come out to approximately $20.00. Thereafter, he would be required to make $20 monthly payments to the court until the full filing fee was paid (assuming that his income remained approximately $100 a month). *See* 28 U.S.C. § 1915(b)(2).

Respondent and the United States argue that petitioner has not sustained any injury because he has access to funds that would enable him to pay the full filing fee. If he simply accumulated his Department of Veterans' Affairs disability checks for two months, they assert, he would have more than enough money to cover the filing fee. However, the fact is that petitioner would suffer an injury if he is required to pay out the bulk of two months' receipts all at once, when other persons are not required to pay the full filing fee as a condition of proceeding in federal court. If Ford Motor Company were the only federal court litigant required to pay a filing fee in full while other similarly situated plaintiffs were allowed to pay in installments, I would not conclude that Ford lacked standing to challenge the differential treatment simply because the company had access to the funds with which to pay the higher fee.

In this respect, I find the Eighth Circuit's decision in *Lyon v. Krol,* 127 F.3d

763 (1997), unpersuasive. Inmate Lyon wanted to sue Iowa prison officials for permission to participate in Jewish services and purchase kosher food. Although Lyon met the district court's indigency standard, the court of appeals held that he did not have standing to challenge § 1915(g) because he had $138.40 in his prison account and $64.52 in a savings account and was receiving $67.20 in prison wages each month. The court held that the existence of the funds prevented Lyon from showing that the fee requirement prevented him from gaining access to the court; therefore, it could not be said that the fee requirement deprived him of his right of access to the court. In dissent, Judge Heaney noted that requiring Lyon to "be completely broke to have standing is simply not the law of our circuit, and such a requirement violates the same equal protection principles as section 1915(g) itself: if a nonprisoner may challenge a statute under in forma pauperis status, a prisoner should not have a higher burden (i.e., demonstrate complete destitution) to bring such a challenge." *Id.* at 766.

I conclude that petitioner has standing to prosecute his challenge to § 1915(g)'s differential treatment of indigent litigants. But for the existence of that statute, he would qualify financially for the partial payment scheme § 1915(b) prescribes for indigent prisoners allowed to proceed *in forma pauperis* and would be able to bring his claim of constitutionally inadequate medical treatment without having to pay the full $150 filing fee at the time he submitted his proposed complaint. If he were not a prisoner, he could bring a suit without having to pay any filing fee at all.

B.  *Constitutionality of § 1915(g)*

■ Without the right to petition the courts, federal constitutional rights would be of little value. The right of access is the bedrock of fundamental constitutional rights, enabling persons to vindicate and protect those rights. It is particularly important for prisoners. *See, e.g., Jenkins v. Lane,* 977 F.2d 266, 268 (7th Cir.1992) ("An inmate's access to the courts is the most fundamental of his rights: 'all other rights of an inmate are illusory without it, being entirely dependent for their existence on the whim or caprice of the prison warden.' ") (quoting *Adams v. Carlson,* 488 F.2d 619, 630 (7th Cir.1973)). The source of this right has been identified variously as deriving from the due process and equal protection clauses of the Fifth and Fourteenth Amendments and from the First Amendment. Petitioner brings his challenge under the equal protection and due process clauses.

■ Mere access to the courts is not a fundamental right; the right is determined by the purpose for which access is sought. The Supreme Court has defined the right as "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith,* 430 U.S. 817, 825, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). For prisoners, this means a reasonably adequate opportunity to gain access to the courts in order to pursue direct appeals from the convictions for which they were incarcerated, to present habeas corpus petitions and to bring actions under 42 U.S.C. § 1983 to vindicate " 'basic constitutional rights' " regarding the conditions of their confinement. *Lewis,* 518 U.S. at 354, 116 S.Ct. 2174 (quoting *Wolff v. McDonnell,* 418 U.S. 539, 579, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)).

Technically, because petitioner is challenging a federal statute, the analysis proceeds under the Fifth and not the Fourteenth Amendment. The Fifth Amendment does not contain an equal protection clause, but the Supreme Court

has held that the amendment's due process clause prevents the federal government from "engaging in discrimination that is 'so unjustifiable as to be violative of due process.'" *Schlesinger v. Ballard,* 419 U.S. 498, 500 n. 3, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975) (quoting *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954)). *See also Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997) ("the standards for analyzing equal protection claims under either amendment are identical").

Access to the court cases often implicate both due process and equal protection. After all, fair access to procedures is what underlies the claims of invidious discrimination in these cases. In *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), for example, a plurality of the Supreme Court rested its holding on both concepts when it held that the opportunity to appeal a criminal conviction could not be denied to persons unable to pay costs of trial transcripts, observing that "[b]oth equal protection and due process emphasize the central aim of our entire judicial system-all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court'" (quoting *Chambers v. Florida,* 309 U.S. 227, 241, 60 S.Ct. 472, 84 L.Ed. 716 (1940)). (In contrast to the plurality, Justice Frankfurter based his concurrence solely on equal protection grounds. *See id.* at 23, 76 S.Ct. 585: "When a State deems it wise and just that convictions be susceptible to review by an appellate court, it cannot by force of its exactions draw a line that precludes convicted indigent persons ... from securing such a review....."). *See also Douglas v. California,* 372 U.S. 353, 357, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (relying on both equal protection and due process in concluding that denial of assistance of counsel to indigent defendants on appeal works invidious discrimination between rich and poor and does not comport with fair procedure).

Petitioner's equal protection argument is that § 1915(g) effectively bars him and other indigent prisoners who have had three previous suits dismissed from obtaining access to the courts. The statute requires payment not of just a portion of the money the prisoner has in his prison account but the full amount of the filing fee, whether or not the prisoner has any ability to raise the money. This requirement does not bar prisoners with money, no matter how many frivolous suits they may have filed, and it does not bar nonprisoners: they are free to file as many frivolous suits as they wish without incurring any limitation on future suits. According to petitioner, this distinction violates the equal protection clause, which guarantees that "all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

Petitioner acknowledges that ordinarily a properly enacted statute will survive an equal protection challenge if "the legislative classification, ... bears a rational relation to some legitimate end." *Romer v. Evans,* 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). It is only if the statute either interferes with a fundamental right or discriminates against a suspect class that it will have to withstand strict scrutiny. *See Kadrmas v. Dickinson Public Schools,* 487 U.S. 450, 457–58, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988). Petitioner concedes, as he must, that indigent prisoners are not a suspect class. *See Lucien v. DeTella,* 141 F.3d 773, 775 (7th Cir.1998) (holding that indigent prisoners not suspect class); *see also Rivera v. Allin,* 144 F.3d 719, 727 (11th Cir.1998); *Carson v. Johnson,* 112 F.3d 818, 821–22

(5th Cir.1997). By implication, the Supreme Court has reached the same conclusion. *See City of Cleburne* 473 U.S. at 440–41, 105 S.Ct. 3249 (listing suspect classes without including prisoners). Petitioner is contending that § 1915(g) requires strict scrutiny because it interferes with a fundamental right: his right of reasonable access to the courts to assert a fundamental constitutional right.

■ A review of petitioner's proposed complaint shows that he wishes to assert such a fundamental constitutional right: his Eighth Amendment right not to be subjected to cruel and inhuman punishment. Petitioner is alleging that respondent has denied him treatment for a serious medical condition of post traumatic stress syndrome from which he suffers. At this stage of the litigation, it is not possible to evaluate petitioner's chances of prevailing on this claim. He may be unable to show either that he is suffering from debilitating manifestations of the syndrome so as to support a claim of serious medical need or that respondent is deliberately indifferent to his need by denying him effective treatments that could ease or cure his condition. However, I cannot say that he could not make such a showing. According to 5 Robert K. Ausman & Dean E. Snyder, *Medical Library* 8:32 (1990), post traumatic stress syndrome can manifest itself in sleeping disturbances, heightened anxiety, depression and cognitive difficulties and can be treated with psychotherapy and medication. Respondent argues that petitioner has not stated a claim because prisoners are not entitled to medical treatments of their own choosing. This argument misses the mark. Petitioner is not asserting that he should receive a specific form of treatment; instead, he is alleging that he has received no treatment whatsoever despite having a diagnosis of a serious disorder. I

conclude that as to the claim of denial of essential medical treatment, petitioner is attempting to vindicate a fundamental constitutional right. In addition to his claim of denial of essential medical care, petitioner is complaining about a threatened move to an out-of-state prison at which he would have even a slighter chance of receiving proper treatment. Respondent is on solid ground when he argues that petitioner has no constitutional right not to be transferred to another institution. In and of itself, such a claim is legally frivolous, because the law is firmly established that prisoners have no right to be housed in any particular institution and may be housed out-of-state, even in a privately run facility. *See Meachum v. Fano,* 427 U.S. 215, 233–34, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (transfer of prisoner from one prison to another does not implicate any liberty interest of prisoner); *see also Olim v. Wakinekona,* 461 U.S. 238, 245, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (inmate has no justifiable expectation in not being transferred out-of-state); *Pischke v. Litscher,* 178 F.3d 497, 500 (7th Cir.1999) (no provision of Constitution violated by decision of state to confine convicted prisoner in prison owned by private firm rather than by government).

■ Petitioner has also asserted a claim under the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213. Such a claim does not implicate a fundamental *constitutional* right, even if it were not barred by the Eleventh Amendment. *See Board of Trustees of the University of Alabama v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001).

■ Respondent argues that a constitutional requirement allowing access to the courts without prepayment of the full fee is the exception, not the general rule, and that in civil cases it applies only to situations in which state control of a fundamen-

tal family relationship is involved. Citing *M.L.B. v. S.L.J.*, 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996), and *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), respondent maintains that petitioner cannot show that his access to the court claim implicates a fundamental constitutional right that would trigger strict scrutiny analysis. In *Boddie,* the Supreme Court recognized a fundamental right in gaining access to the courts for the purpose of obtaining a divorce. The Court placed weight on the importance of marriage in American society; the significant impairment of the parties' abilities to pursue other protected associational activities if they could not obtain a divorce; and the state's monopolization of the establishment, enforcement and dissolution of the marital relationship, with the resulting lack of any alternative to the judicial process. In *M.L.B.,* the Court held that the right to maintain ties with one's children was so fundamental that the state could not impose financial barriers that would prevent indigent parents from obtaining appellate review of a judicial termination of their parental rights.

As respondent points out, the Supreme Court has refused to recognize a fundamental right of access to court when the object is to obtain a new start in life through bankruptcy, *see United States v. Kras,* 409 U.S. 434, 444–45, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973) (distinguishing bankruptcy from interest in establishing or dissolving marriage), or to obtain judicial review of administrative decisions to reduce welfare benefits, *see Ortwein v. Schwab,* 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973) (per curiam). This does not mean, however, that the Court recognizes a right of access to the courts in civil cases only when family issues are at stake. Respondent fails to acknowledge that the Supreme Court has stated explicitly that access to the court includes the opportunity for prisoners to vindicate "basic constitutional rights" regarding the conditions of their confinement. *Lewis,* 518 U.S. at 354, 116 S.Ct. 2174; *Wolff,* 418 U.S. at 579, 94 S.Ct. 2963; *Carson,* 112 F.3d at 821 (noting that in civil context, courts must waive fees for indigent litigant who has fundamental interest at stake).

If § 1915(g) is read as applying to claims involving fundamental rights, it would have to be subjected to a strict scrutiny analysis it could not survive. The statute is not a law of general applicability that has a disparate impact on the poor that might have to be upheld in the absence of a showing that it had been enacted with the purpose of discriminating deliberately against indigent persons. *Cf. Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) (law that is neutral on its face is not invalid solely because it has disproportionate impact upon one race; "invidious quality of a law claimed to be racially discriminatory must ultimately be traced to a racially discriminatory purpose"). Rather, § 1915(g) is a law enacted to affect one discrete group: indigent prisoners.

Unlike rational basis analysis, under which legislative enactments are upheld if a court can imagine any rational link between the challenged legislation and a proper governmental objective, *see, e.g., FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211(1993) (legislative classification must be upheld if there is "any reasonably conceivable state of facts that could provide a rational basis" for it), strict scrutiny analysis places the onus on the government to explain the rationale for the legislation. The government must show both that it had a compelling governmental interest it sought to achieve and that the means it chose were narrowly tailored to the desired result. *See Plyler v. Doe,* 457 U.S.

202, 216–17, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) ("Statutes that substantially burden a fundamental right ... must be narrowly tailored to serve a compelling governmental interest."). Neither respondent nor the United States has shown that if § 1915(g) is read as requiring indigent prisoners to pay the full filing fee in order to bring claims involving fundamental constitutional rights if they have filed three cases in the past that were dismissed for one of the reasons set out in § 1915(g), it advances a compelling governmental objective by carefully tailored means.

Respondent and the United States have assumed that petitioner has no fundamental interest at stake. They have ignored *Wolff's* and *Lewis's* teachings to the contrary and have not attempted to show how § 1915(g) could withstand strict scrutiny. Presumably respondent and the United States would identify the reduction in the filing of frivolous prisoner suits as the compelling governmental interest that § 1915(g) tries to advance. Such a governmental goal is legitimate, but it is difficult to characterize it as compelling. Even accepting for purposes of argument that the general goal of reducing frivolous prisoner filings is a compelling interest, the government would be hard-pressed to explain why it has a compelling interest in the enactment and implementation of § 1915(g) when it has enacted other statutory provisions, such as §§ 1915(b) and 1915(e), that have resulted in a significant reduction in filings. Section 1915(b) deters frivolous filings by requiring a prepayment of at least some portion of the filing fee; § 1915(e)(1) permits the courts to dismiss a case at any time it determines that the litigant's allegation of poverty is untrue or the action is frivolous or malicious, fails to state a claim or seeks monetary relief from an immune defendant. With courts assuming this expanded screening function, the burden on state attorneys general has decreased substantially.

As to the narrowly tailored half of the equation, the government would have an even more difficult task in meeting its burden. Section 1915(g) is not designed to weed out only those cases that do not implicate a substantial constitutional right. Rather, it prevents litigants from bringing any suit of whatever merit, if he has had three suits or appeals dismissed in the past. It is a valid legislative goal to seek ways to deter truly frivolous or malicious litigation; the problem arises when the means chosen deter potentially meritorious constitutional challenges as well.

The statute is deficient in making no distinction in the reasons for the past dismissals. By assuming that any prisoner who has accumulated three strikes has "abused" the system, Congress has extended the law's reach to persons who have never filed a truly frivolous or malicious complaint but have filed complaints that were dismissed for technical reasons. Often, these technical dismissals are of the kind that ensnare trained lawyers, such as Eleventh Amendment immunity or the limitations of respondeat superior liability in the public setting.

The statute is not narrowly tailored for another reason. It allows unlimited numbers of frivolous and malicious suits to be brought by nonprisoners or by prisoners who are not indigent, despite the fact that litigants in these categories file many such cases. I conclude that, even if the law could be said to advance a compelling governmental purpose, a point about which I harbor serious reservations, it is not narrowly enough tailored to withstand strict scrutiny analysis if it is read as applying to lawsuits raising claims implicating constitutional rights.

As I have noted, petitioner has raised due process challenges to § 1915(g) in ad-

dition to his equal protection argument. *Wolff*, 418 U.S. at 579, 94 S.Ct. 2963, holds that the right of access to the courts "is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." *See also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) ("The Court traditionally has held that the Due Process Clauses protect civil litigants who seek recourse in the courts, either as defendants hoping to protect their property or as plaintiffs attempting to redress their grievances.").

In addition to raising a procedural due process challenge to the denial of a forum in which he can be heard on his fundamental constitutional right, petitioner raises substantive due process challenges. He objects to the "arbitrary, irrational and irreconcilable classifications" Congress chose, Pet.'s Br., dkt. # 2, at 18, which operate to bar the meritorious claims of indigent prisoners, while doing nothing to prevent the filing of non-meritorious claims of non-indigent prisoners or non-prisoners, and he objects to what he characterizes as the irrebuttable presumption that an indigent prisoner with three prior dismissals is incapable of ever possessing a valid constitutional claim. Such a presumption is not based on reason, he argues, citing *Michael H. v. Gerald D.*, 491 U.S. 110, 121, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) (substantive due process requires "the adequacy of the fit between the classification and the policy that the classification serves").

Whether § 1915(g) is challenged as a violation of equal protection or procedural due process makes little difference. If it is read to prevent the bringing of fundamental constitutional rights by indigent prisoner litigants, it is unconstitutional both because it discriminates invidiously between similarly situated persons and because it deprives certain litigants such as petitioner of the use of the courts to vindicate their fundamental constitutional rights. This conclusion makes it unnecessary to determine whether the statute also violates petitioner's and other prisoners' substantive due process rights.

The statute is not saved by its exception for prisoners who are in imminent danger of serious physical harm. The exception is far too limited. For example, it would not encompass a claim of denial of access to all religious services or one of continuing, blatant racial discrimination, no matter how well founded. In addition, even as to the narrow range of situations in which prisoners might bring suit under this exception, some courts have limited the exception further by holding that it applies only if the prisoner is in danger at the time of filing. *See, e.g., Abdul–Akbar v. McKelvie*, 239 F.3d 307 (3d Cir.2001); *Medberry v. Butler*, 185 F.3d 1189, 1193 (11th Cir. 1999); *Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir.1998); *Banos v. O'Guin*, 144 F.3d 883, 884–85 (5th Cir.1998) (all holding that "imminent danger" must be assessed at time complaint is filed; prisoner's allegation that he faced danger in past is insufficient to allow him benefit of § 1915(g)'s exception).

■ To avoid the constitutional problems that § 1915(g) could raise, the statute must be interpreted to exclude claims that raise fundamental constitutional rights. As to these claims, indigent prisoners such as petitioner would be treated in the same manner as those prisoners eligible to file under § 1915(b). The fee scheme prescribed in § 1915(b) provides the reasonable access to which prisoners raising fundamental constitutional rights are entitled. It does not give them a free ride even at the filing stage, except in those situations

in which they can show they are completely without a source of funds to pay a filing fee before their complaint can be reviewed, and even then, they incur an obligation to pay the full fee in the future.

Such a reading of § 1915(g) responds to the United States' argument that even if a prisoner has a fundamental right of access to the courts to raise a basic constitutional claim, § 1915(g) does not violate the Constitution because prisoners are guaranteed only a "reasonable" right of access to the courts, which is not violated by having to pay a fee. *See Lumbert v. Illinois Dept. of Corrections,* 827 F.2d 257 (7th Cir.1987) (upholding district court's local rule imposing fees on inmate litigation based on percentage of inmate's average monthly income). The fee scheme at issue in *Lumbert* worked much like the one prescribed in § 1915(b). The district court calculated a fee based on half of the inmate's average monthly income. It did not look to anticipated income, to possible gifts or to future work opportunities and it did not impoverish the inmate by taking all of his available cash. Indeed, the inmate was provided an opportunity to show why he could not make even the partial payment determined by the court. Like § 1915(b), the scheme in *Lambert* provided a fair balance between the government's interest in deterring inmates from filing suits in haste without confirming their legal and factual merit and the prisoners' interest in having access to a forum in which they might vindicate their fundamental constitutional rights. If § 1915(g) is read literally, an inmate must pay the full filing fee whether or not he has the funds to do so. If he lacks the funds and has no outside sources of income, gifts or loans and is unable to work in the institution, he is barred forever from filing a suit, no matter how egregious the constitutional wrong to which he might be subjected. Such a reading raises constitu-tional problems. *See Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988) (noting " 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim").

Using § 1915(b) as the template for imposing fees for prisoners who have a constitutional right to obtain access to the courts avoids the problems inherent in trying to determine the reasonableness of requiring a particular indigent inmate to pay the full fee before filing. Respondent and the United States argue that it would be reasonable to require petitioner to save his Department of Veterans' Affairs checks until he has enough money to pay the full fee. Rather than try to determine whether it would be reasonable to require a prisoner to save his money for two months or three or seven before he can seek relief for a constitutional violation, it is sensible to rely on the congressional determination of reasonable financial requirements contained in § 1915(b).

Respondent and the United States argue that petitioner cannot assert that he has been denied due process when he has available to him the extensive administrative complaint procedure set out in Wis.Admin.Code ch. DOC 303 and 310. In this respect, they contend, petitioner's situation is distinguishable from the plaintiffs in *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), who had no forum other than the state court system for obtaining a dissolution of their marriage, and the plaintiff in *M.L.B. v. S.L.J.,* 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996), who could appeal the termination of her parental rights only through the state courts.

This argument is not directed to petitioner's claim of an equal protection viola-

tion but only to his due process claim. As to that claim, it is unpersuasive. It is true that petitioner has an available administrative procedure, but it is not a sufficient alternative to federal court. It does not provide petitioner the access to the courts that the Supreme Court has held must be available for prisoners to vindicate their basic constitutional rights regarding the conditions of their confinement. *See Lewis v. Casey,* 518 U.S. 343, 354, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Respondent and the United States cite *Ortwein,* 410 U.S. 656, 93 S.Ct. 1172, as an example of a case in which the availability of an alternative forum was held to be sufficient process. The citation is inapposite. In *Ortwein,* the Court determined that the interest at stake (a reduction in welfare payments) was not of constitutional significance. In this case, petitioner is raising a significant constitutional claim.

Neither respondent nor the United States argues that petitioner's right of access is not impaired because he might be able to obtain relief in state court. I note the point only because one circuit court of appeals has held that such an alternative precludes a claim of denial of access to the courts. In *Wilson v. Yaklich,* 148 F.3d 596 (6th Cir.1998), the court found that § 1915(g) did not deprive the indigent prisoner of any fundamental right when he was not allowed to file in federal court without prepaying the entire filing fee. The court relied on its understanding that at the time of his initial filing, the appellant could have filed *in forma pauperis* in the courts of Ohio. Unlike the Ohio courts, the Wisconsin courts have adopted their own version of § 1915(g). *See* Wis.Stat. § 802.05(3)(b) (1997–98); *see also Wisconsin ex rel. Khan v. Sullivan,* 235 Wis.2d 260, 613 N.W.2d 203 (Ct.App.2000) (upholding constitutionality of § 802.05(3)(b), which bars indigent prisoners from proceeding without prepayment of the entire

filing fee if the prisoner has had three dismissals of actions as frivolous, brought for an improper purpose, seeking damages from an immune defendant or failing to state a claim upon which relief may be granted).

Even if a state court remedy were available to petitioner, I cannot accept the suggestion that the availability of a state court remedy saves § 1915(g). Doing so would require ignoring the important and historic role that the federal courts have played in the vindication of federal constitutional rights. *See Abdul–Akbar,* 239 F.3d 307, 325 (Mansmann, J., dissenting); *Rivera v. Allin,* 144 F.3d 719–724 n. 9 (11th Cir. 1998) (declining to place reliance on availability of state forum and noting important interest of prisoners " 'in access to federal courts for vindication of their federal constitutional rights' ") (quoting *Lyon v. Krol,* 940 F.Supp. 1433, 1437 (S.D.Iowa 1996), *appeal dismissed and remanded,* 127 F.3d 763 (8th Cir.1997)); Joseph T. Lukens, *The Prison Litigation Reform Act; Three Strikes and You're Out of Court—It May Be Effective, But Is It Constitutional?,* 70 Temp.L.Rev. 471, 512 (1997) ("Congress enacted section 1983 in order to ensure that victims of civil rights violations by persons acting under color of law would have a federal forum to seek redress against these violations."). *Cf. Smith v. Bennett,* 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961) (holding that availability of *federal* remedy did not permit state court to impose filing fee that had effect of barring indigent prisoners from filing petitions for writs of habeas corpus).

■ As respondent and the United States point out, a number of courts have relied on the rationale that *in forma pauperis* status is a creature of statute, rather than a constitutional right, and may be revoked or limited at any time. They do

not add that the courts that have taken this approach have been addressing cases in which the suits the prisoner litigants were bringing did not implicate fundamental constitutional rights. In *Rodriguez v. Cook*, 169 F.3d 1176 (9th Cir.1999), for example, the petitioner was challenging the constitutionality of § 1915(g) because he objected to Oregon's rule allowing prisoners no more than five free postage stamps each month. The court of appeals held that the underlying challenge to the five stamp limit did not implicate a fundamental interest: "[Rodriguez's] claim for more stamps does not implicate the right to access the courts but constitutes an attack on the particular methodology chosen by Oregon to fulfill the constitutional requirement of access to the courts," *id.* at 1180. "IFP status is not a constitutional right .... where no fundamental interest is at stake, ' "Congress is no more compelled to guarantee free access to federal courts than it is to provide unlimited access to them." ' " *Id.* (quoting *Rivera*, 144 F.3d at 724 (quoting in turn *Roller v. Gunn*, 107 F.3d 227, 231 (4th Cir.1997))).

In *White v. State of Colorado*, 157 F.3d 1226, 1233 (10th Cir.1998), the prisoner argued that because § 1915(g) was preventing him from raising an issue of a fundamental constitutional right, the court was required to analyze the statute strictly. The court disagreed, finding that White was merely raising the same claim of denial of necessary medical care he had litigated unsuccessfully once before. Because White could not show that a fundamental right was at stake, he could not say that § 1915(g) was impairing his right of access to the courts. Building on this finding, the court held that rational basis was the proper standard for reviewing the statute's constitutionality and concluded that it was rational for Congress to enact § 1915(g) as a means of deterring frivolous and malicious prisoner lawsuits. It added

that " 'proceeding [in forma pauperis] in a civil case is a privilege, not a right—fundamental or otherwise.' " (quoting *Rivera*, 144 F.3d at 725).

In *Rivera*, 144 F.3d 719, the court found that appellant's underlying claim was frivolous and did not implicate any fundamental interest. (Rivera alleged that the prison doctor had disregarded Rivera's medical needs and fondled Rivera's genitals while examining him. It is not clear from the opinion why the court viewed the disregard of medical needs as frivolous; presumably, it was because Rivera did not allege any specific medical need and link it to the denial of constitutionally adequate medical care.) In denying Rivera's challenge to § 1915(g), the court stated that "[t]he Supreme Court has mandated waivers of filing fees in civil cases only where 'the litigant has a "fundamental interest at stake." ' " *id.* at 724 (quoting *Carson v. Johnson*, 112 F.3d 818, 821 (5th Cir.1997)). Since Rivera did not have such an interest, the court held that he could not show he was being denied his right of access to the court by having to pay the full filing fee as a precondition of filing suit.

The difficulty with the argument that *in forma pauperis* status is a "privilege, not a right" was identified in *Griffin v.. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). The Court held that the states have no obligation to provide appellate review of convictions, but if they do, they have to structure the review in a way that does not discriminate on the basis of poverty. Congress is free to withdraw or amend the privilege of proceeding *in forma pauperis* at any time, provided it does so in a way that does not impair the exercise of a fundamental right or discriminate invidiously, such as by extending *in forma pauperis* status to only those indigent persons who are blue-eyed and blond.

Respondent and the United States argue that there is no invidious discrimination resulting from § 1915(g)'s special requirements. They maintain that every indigent person, prisoner or non-prisoner, has the opportunity to file *in forma pauperis* in federal court; all § 1915(g) says is that indigent prisoners who abuse the system may not continue to use it without paying a filing fee; and it is not necessary to impose the same restrictions on indigent non-prisoners because they do not have the same time and opportunity to file lawsuits. Their argument is essentially irrefutable, insofar as it relates to frivolous or malicious suits that do not raise claims of violations of fundamental constitutional rights. There is a rational relationship between the harm sought to be avoided (frivolous prisoner suits) and the means (setting a limit on the number of frivolous suits any prisoner may file without prepaying the filing fee). When the claim involves a fundamental constitutional right, however, the analysis is different. The government's fee requirement has the effect of infringing upon a fundamental constitutional right and a court must apply a strict scrutiny analysis.

Respondent and the United States rely on *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), for the proposition that, like prison regulations, § 1915(g) must be upheld if the statute is related reasonably to a legitimate penological interest. They argue that the court must uphold what would otherwise be an unreasonable infringement of fundamental constitutional rights were it to apply outside the prison setting so long as the infringement has the requisite reasonable relationship. As petitioner points out, the holding in *Turner* and in later cases, such as *Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), and *O'Lone v. Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), applies to prison regulations, not to federal statutes. The usual justification for deferring to prison regulations is not present when considering federal statutes. Prison regulations are enacted and implemented by persons in the business of running prisons; the Supreme Court has held that subjecting those regulations to strict scrutiny would impede prison officials in the efficient operation of the prisons. *See Turner*, 482 U.S. at 89, 107 S.Ct. 2254 (deferential standard is "necessary if 'prison administrators and not the courts, [are] to make the difficult judgments concerning institutional operations'") (quoting *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 128, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)). Not only is *Turner* an inappropriate framework for evaluating legislation, respondent and the United States do not attempt to explain how *Turner* overrides the holdings in *Wolff v. McDonnell*, 418 U.S. 539, 579, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and *Lewis*, 518 U.S. at 354, 116 S.Ct. 2174, that prisoners must have a reasonably adequate opportunity to gain access to the courts to vindicate their fundamental constitutional rights.

Finally, respondent and the United States argue that denying *in forma pauperis* status to abusive litigators by statute is merely a codification of what is a common practice in the courts. They cite a number of cases in which the Supreme Court has denied such status to prisoners with a history of filing frivolous suits. *See, e.g., Shieh v. Kakita*, 517 U.S. 343, 343–44, 116 S.Ct. 1311, 134 L.Ed.2d 464 (1996); *Martin v. District of Columbia Court of Appeals*, 506 U.S. 1, 2, 113 S.Ct. 397, 121 L.Ed.2d 305 (1992); *In re McDonald*, 489 U.S. 180, 187, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989).

For a court to impose a sanction on a prisoner who has demonstrated a clear

history of either filing nothing but frivolous cases or an excessive number of frivolous cases is quite different from the legislature's enactment of an across-the-board sanction that applies to all indigent prisoners who file three suits that are dismissed for one of the reasons enumerated in § 1915(g). In the first instance, there is a particularized determination that the prisoner in question is abusing the system by filing suits that are truly frivolous or malicious. In the second, there is no requirement for any inquiry into the nature of the prisoner's filings to determine whether he is abusing the system or whether his prior dismissals resulted from his unsophisticated research skills, inadequate legal resources or technicalities that pro se litigants would be unlikely to know or understand.

Although I have reservations upon imposing even a particularized blanket rule preventing certain prisoners from making any future filings regardless of the nature of those filings, at least such a rule has the virtue of being an individualized response to a specific instance of demonstrated abuse. Section 1915(g) does not have even that to commend it.

I conclude that § 1915(g) must be read as excluding proposed suits that raise claims involving substantial constitutional rights. As to such suits, the provisions of § 1915(b) will apply to allow the court to determine the initial prepayment that a petitioner must make before his case will be filed. Reviewing proposed complaints for the existence of a viable constitutional claim will add little to the work load of the courts, since they must screen all such cases for allegations of imminent threat of serious physical harm. If it adds any workload, it is readily justified so long as it remains the central mission of federal courts to protect the constitutional rights of all persons, whether in or out of prison.

ORDER

IT IS ORDERED that

1. Petitioner William Clifton Lewis's motion for a declaration that 28 U.S.C. § 1915(g) deprives him of his equal protection and due process rights is DENIED because the statute does not prevent him from proceeding under the provisions of § 1915(b); § 1915(g) is constitutional only if it is read as not applying to indigent prisoners such as petitioner who are bringing lawsuits raising claims of the violation of a substantial constitutional right;

2. Pursuant to 28 U.S.C. § 1915(b), petitioner is assessed $21.27 as an initial partial payment of the $150 fee for filing this case. He is to submit a check or money order made payable to the clerk of court in the amount of $21.27 on or before April 4, 2001. The remainder of the fee is to be taken from petitioner's account in monthly installments pursuant to § 1915(b). If, by April 4, 2001, petitioner fails to pay the initial partial payment or show cause for his failure to do so, I will dismiss this case for his failure to prosecute.