In the
United States Court of Appeals
For the Seventh Circuit

Nos. 01-2251 & 01-2252

William C. Lewis,

Plaintiff-Appellee,

v.

Michael Sullivan, Secretary, Wisconsin
Departmentof Corrections, and his
successor Jon E. Litscher,

Defendants-Appellants,

and

United States of America,

Intervening Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 00-C-705-C--Barbara B. Crabb, Chief Judge.

Argued November 29, 2001--Decided February 1, 2002

Before Coffey, Easterbrook, and Ripple,
Circuit Judges.

Easterbrook, Circuit Judge.  One of the
changes made in 1996 by the Prison
Litigation Reform Act requires prisoners
to prepay the filing and docketing fees
of most future suits, if they have a
history of frivolous litigation. The
precise language of what has come to be
called the three-strikes rule is this:

In no event shall a prisoner bring a
civil action or appeal a judgment in a
civil action or proceeding under this
section if the prisoner has, on 3 or more
prior occasions, while incarcerated or
detained in any facility, brought an
action or appeal in a court of the United
States that was dismissed on the grounds
that it is frivolous, malicious, or fails
to state a claim upon which relief may be
granted, unless the prisoner is under
imminent danger of serious physical
injury.

28 U.S.C. sec. 1915(g). The reference to "this section" is to all of sec. 1915, which permits litigation in forma pauperiswithout prepayment of fees and costs. As a result, a prisoner who has "struck out" must pay all required fees in future cases, "unless . . . under imminent danger of serious physical injury." This suit was filed by a prisoner who has a history of frivolous litigation and thus comes within sec. 1915(g), and who does not claim to be "under imminent danger of serious physical injury." Nonetheless, the district court has excused prepayment of the required $150 fee. The judge concluded that sec. 1915(g) would be unconstitutional unless read to allow judges to dispense with prepayment whenever, in their discretion, they viewed the prisoners' claims to be substantial. 135 F. Supp. 2d 954 (W.D. Wis. 2001). At the request of the United States, which intervened to defend the constitutionality of sec. 1915(g) as written, the district judge certified this ruling for interlocutory appeal under 28 U.S.C. sec. 1292(b).

   Seven courts of appeals have considered constitutional objections to sec. 1915(g). These arguments have been based on the due process right of access to the courts, the equal protection clause, the ex post facto clause, the first amendment right to petition for redress of grievances, and several others. None has succeeded. All seven decisions have held that sec. 1915(g) is constitutional. See Abdul-Akbar v. McKelvie, 239 F.3d 307 (3d Cir. 2001) (en banc); Carson v. Johnson, 112 F.3d 818 (5th Cir. 1997); Wilson v. Yaklich, 148 F.3d 596 (6th Cir. 1998); Higgins v. Carpenter, 258 F.3d 797 (8th Cir. 2001); Rodriguez v. Cook, 169 F.3d 1176 (9th Cir. 1999); White v. Colorado, 157 F.3d 1226 (10th Cir. 1998); Rivera v. Allin, 144 F.3d 719 (11th Cir. 1998). Lewis, all of whose theories have been considered in at least one of these opinions, asks us to disagree with all of them and to deem sec. 1915(g) not "narrowly tailored." (According to Lewis, Congress should have written a law applicable to frivolous suits by prisoners and non-prisoners alike, and should have carved out of its scope all substantial suits.) We find these decisions to be sound, however, and accordingly reverse the judgment of the

district court. Lewis's suit must be dismissed for failure to pay the filing fee.

Our reason is simple: there is no constitutional entitlement to subsidy. The right to publish a newspaper does not imply a right to governmental funding, or even to a library where people can read the papers for free. A woman's right to choose whether to have an abortion does not imply a right to have the government cover the medical costs. See Maher v. Roe, 432 U.S. 464 (1977). A right to education does not imply a right to free transportation to school. See Kadrmas v. Dickinson Public Schools, 487 U.S. 450 (1988). A right to petition for redress of grievances does not imply a right to free writing paper and stamps. Federal courts are subsidized dispute-resolvers; filing fees defray only a small portion of the costs. A requirement that plaintiffs cover some of these costs cannot be called unconstitutional. The Supreme Court has never held that access to the courts must be free; it has concluded, rather, that reasonably adequate opportunities for access suffice. Lewis v. Casey, 518 U.S. 343 (1996). The First Congress--almost all of whose members attended either the Constitutional Convention in Philadelphia or the state ratifying conventions that put the Constitution into force, and which proposed the Bill of Rights to the states--provided for filing fees by all plaintiffs. See the Process Act of 1789, 1 Stat. 93 (setting fees in federal litigation at the same level charged by comparable state courts) (replaced by 1 Stat. 275 (1792) setting federal fees directly). Not until 1892 was provision made for any federal litigant to proceed in forma pauperis. This speaks volumes about the constitutionality of filing fees; otherwise the federal courts operated unconstitutionally for their first century.

Filing fees for civil suits have been challenged on constitutional grounds before, without success. United States v. Kras, 409 U.S. 434 (1973), rejects a constitutional objection to the filing fee in bankruptcy litigation. Although Congress must act rationally when deciding which litigants must contribute toward the costs of the judicial system, we have already held, see Zehner v.

Trigg, 133 F.3d 459 (7th Cir. 1997), that it is within the legislative power to place special limitations on prisoners' litigation. Prisoners have ample time on their hands and have demonstrated a proclivity for frivolous suits to harass their accusers, the guards, and others who caused or manage their captivity. Section 1915(g) singles out only a subset of prisoners--those who have established, by their own conduct, that they are among the abusers of the judicial system. Requiring persons who have abused the forma pauperis privilege in the past to pay in the future is a sensible and modest step. See, e.g., In re Sindram, 498 U.S. 177 (1991) (requiring abusers to prepay in future cases); In re Skupniewitz, 73 F.3d 702 (7th Cir. 1996) (sustaining against constitutional attack a bar on civil litigation by abusers who have failed to pay sanctions). Section 1915(g) would come in for trouble if, like the statute in Lindsey v. Normet, 405 U.S. 56 (1972), it required one class of litigants to pay more than the full cost of litigation (in Lindsey the statute required an appellant to post a bond for double the judgment and costs). But since even full payment of the $150 filing fee leaves prisoners the recipients of a net subsidy, they have no complaint. Anyway, everyone allowed to proceed in forma pauperis owes the fees and must pay when able; the line drawn by sec. 1915(g) concerns only the timing of payment. Section 1915(g) does not have a substantive effect. That's why we held it applicable to cases in which the "strikes" predate the plra. See Abdul-Wadood v. Nathan, 91 F.3d 1023 (7th Cir. 1996).

Lewis tries to sidestep these principles by contending that prisoners who file suit about prison conditions should be treated like criminal defendants--who if poor not only need not pay fees for transcripts, see Griffin v. Illinois, 351 U.S. 12 (1956), but also are entitled to counsel at public expense, see Gideon v. Wainwright, 372 U.S. 335 (1963). The analogy doesn't work very well, for Lewis acknowledges that he is not entitled to a free lawyer. Being a civil plaintiff (or even a civil defendant) and a criminal defendant are fundamentally different. See United States v. 7108 West Grand Avenue, 15 F.3d 632 (7th Cir. 1994) (no right to counsel in forfeiture

proceedings); Stroe v. INS, 256 F.3d 498 (7th Cir. 2001) (no right to counsel at public expense in deportation proceedings, or to competent privately retained counsel). The few proceedings in which civil litigants have been held entitled to a subsidy (via free counsel or waiver of fees) arise from prosecution-like proceedings, in which the public proposes to take away a person's children or impose other loss so great that it amounts to deprivation of a fundamental right. See M.L.B. v. S.L.J., 519 U.S. 102 (1996); Boddie v. Connecticut, 401 U.S. 371 (1971). Lewis has not been threatened with such a loss; he is the plaintiff, after all. He wants the prison system to provide him with counseling for post-traumatic stress disorder, but psychiatric care has never been seen as a fundamental right. Cf. Washington v. Glucksberg, 521 U.S. 702 (1997) (defining fundamental rights). Even persons who are suicidally depressed are entitled, at most, to precautions that will stop them from carrying through; they do not have a fundamental right to psychiatric care at public expense.

It is not hard to imagine situations where fundamental rights would be at stake. A gravely ill prisoner, or one in great pain, who complained that the staff was gratuitously withholding medical care would have a claim based on the fundamental right protected by the eighth amendment. See Estelle v. Gamble, 429 U.S. 97 (1976). Likewise a prisoner who contended that the guards were deliberately indifferent to violence perpetrated by fellow prisoners--or, worse, were themselves the source of violence against him. See Farmer v. Brennan, 511 U.S. 825 (1994). Prisons curtail rights of self-help (and for that matter means of earning income) and have on that account some affirmative duties of protection. See DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989). This is why the right of access to the courts entails some opportunity to do legal research in a prison library (or something equally good); the prison won't let its charges out to use other libraries, so it must make substitute provision, though not necessarily to the prisoner's liking. See Lewis v. Casey, supra. A federal law that knocked out prisoners' ability to obtain

redress in situations where they are victims of official misconduct, yet lack any non-judicial means to protect themselves, would have to be set aside as unconstitutional under Lewis and the original meaning of the due process clause. Yet sec. 1915(g) does no such thing. A prisoner who suffers a threat to (or deprivation of) fundamental rights has ready access to the courts. Consider the list of options:

1. Pay the filing fee under 28 U.S.C. sec. 1914 using assets on hand.

2. Save up in advance to be able to pay the fee in a lump sum. (This would have taken Lewis about two months, had he deemed the litigation sufficiently important to justify using all of his income for this purpose.)

3. Refrain from frivolous litigation and thus retain full advantage of sec. 1915(a), which authorizes suits without prepaying fees and costs.

4. Borrow the filing fee from friends or relatives.

5. Borrow the filing fee from a lawyer-- for 42 U.S.C. sec. 1988 promises reimbursement of prevailing prisoners' legal expenses, and this plus a share of any recovery may well attract the assistance of counsel, who may (and often do) advance their clients' expenses in contingent-fee cases. See Rand v. Monsanto Co., 926 F.2d 596 (7th Cir. 1991). This option is useful only for prisoners with substantial claims, for only then will counsel see the prospect of fees; but recall that the district court limited its holding to prisoners with substantial claims. Borrowing against the prospect of one's recovery is the norm in tort litigation by persons with substantial claims.

6. Sue in state rather than federal court- -for sec. 1915(g) does not apply in state court, and states must entertain sec. 1983 litigation on a parity with claims under state law. See Howlett v. Rose, 496 U.S. 356 (1990). Some states charge less than the $150 that it costs to file in district court, and this would assist prisoners even if a given state should enact a statute parallel to sec. 1915(g).

7. If all else fails, a prisoner may sue without prepayment when "the prisoner is under imminent danger of serious physical injury." And this is just the category of cases where fundamental rights are most likely to be at stake.

Congress was entitled to conclude that these seven options preserve adequate opportunities for prisoners to vindicate their fundamental rights. They show that sec. 1915(g) effects no real limit on access to courts by prisoners who use their options carefully and responsibly.

Not all of the options will be available all of the time. Prisoners who insist on both filing frivolous suits and spending their income as fast as they receive it, which Lewis has done, will find when they want to sue that options 1, 2, and 3 are closed. But Congress may take them into account, to encourage both thrift and refraining from abusive litigation. Even from an ex post perspective, however, options 4 through 7 are adequate. The worst possible case--a prisoner with no friends or relatives, in a state whose courts have a high filing fee and a provision similar to sec. 1915(g), and who waits until the very last minute (or experiences an emergency) so that it is not possible to secure counsel--still has access to option 7. It is not necessary to add an eighth, for "substantial" claims. When bodily integrity is not at stake, additional delay (while the prisoner uses options 1 through 6) is constitutionally tolerable even when fundamental rights are implicated. Thedesign of sec. 1915(g) is to leave vital choices to the prisoner and the bar, not to use case-by-case screening for merit. That is a function of 28 U.S.C. sec. 1915A, for all prisoner suits; the district court's view effectively obliterates sec. 1915(g) by requiring abusers to be treated identically to those filing their first suit.

Option 7, which allows suit without prepayment when "the prisoner is under imminent danger of serious physical injury", can serve its role as an escape hatch for genuine emergencies only if understood reasonably. If limited to situations in which, say, a beating is ongoing, no prisoner will find solace; once the beating starts, it is too late to avoid the physical injury; and once

the beating is over the prisoner is no longer in "imminent danger" and so could not use this proviso to seek damages (though with a solid claim for damages the prisoner would have an easier time persuading a lawyer to advance the filing fee). Reading the imminent-danger language this way would make it chimerical, a cruel joke on prisoners. The imminent-danger language must be read instead as having a role in those cases where time is pressing and the prisoner is unable to pursue the other options in our list. When a threat or prison condition is real and proximate, and when the potential consequence is "serious physical injury," then the courthouse doors are open even to those who have filed three frivolous suits and do not have a penny to their name. It is not possible to elaborate further; concrete situations will set the stage for any other gloss. Lewis, who wants counseling for a mental condition, cannot take advantage of this option.

Suppose that, instead of enacting sec. 1915(g), Congress had repealed the provision in sec. 1988 that requires defendants to pay prevailing plaintiffs' legal fees. Such a step could not be thought unconstitutional, for it would reinstate the norm of the American Rule, under which each side bears its own legal expenses. The American Rule applies to wrongful-death suits and many other contract and tort actions in which vital rights are at stake. Repeal of sec. 1988 would strike hardest at the most meritorious claims, for it is these that are most likely to be worth counsel's while financially. What Congress did instead is leave sec. 1988 on the books, so that prisoners with substantial claims have a good chance to vindicate them, while making it harder for persons who have demonstrated a proclivity to pursue frivolous suits to continue abusing the courts and their opponents. Section 1915(g) imposes a penalty for crying "wolf." Making it harder to do so again is an eminently reasonable approach, compatible with all of the many constitutional provisions that Lewis has tried to set against it. The judgment of the district court is

reversed.